# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1719

_____

Sharon Owen

*Plaintiff - Appellee*

v.

Bristol Care, Inc., doing business as Bristol Manor, doing business as Ashbury
Heights, doing business as The Essex

*Defendant - Appellant*

------------------------------

Employee Rights Advocacy Institute for Law & Policy; National Employment
Law Project; National Employment Lawyers Association

*Amici on Behalf of Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: November 13, 2012
Filed: January 7, 2013

_____

Before SMITH, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Bristol Care, Inc., ("Bristol Care") appeals the denial of its motion to compel arbitration in a suit initiated by its former employee Sharon Owen asserting claims under the Fair Labor Standards Act ("FLSA") and seeking class action certification on behalf of other similarly situated current and former employees. Bristol Care contends that the district court incorrectly held that the Mandatory Arbitration Agreement ("MAA") signed by Owen and Bristol Care was invalid because it contained a class action waiver provision that prohibits Owen from arbitrating claims subject to the agreement on behalf of a class. For the following reasons, we conclude that the MAA is valid and reverse the district court's order denying Bristol Care's motion to compel arbitration.

## I. Background

Bristol Care, a company that operates residential care facilities for elderly residents, hired Owen as an administrator at its Cameron, Missouri facility in 2009. At the time of Owen's hiring, Owen and Bristol Care signed the MAA, which provides that Owen and Bristol Care agree "to the resolution by binding arbitration of all claims or controversies for which a federal or state court or other dispute-resolving body otherwise would be authorized to grant relief whether arising out of, relating to or associated with . . . any . . . legal theory that Employee may have against the Company or that the Company may have against the Employee." The MAA further provides that it applies to "claims for wages or other compensation," as well as "claims for violation of any federal . . . statute . . . including but not limited to . . . the Fair Labor Standards Act . . . ." The agreement also contains a waiver that prohibits the parties "from arbitrating claims subject to [the] Agreement as, or on behalf of, a class" (the "class waiver"). The MAA, however, "does *not* waiv[e the] right to file a complaint with the U.S. Equal Employment Opportunity Commission . . . or any other federal, state or local agency designated to investigate complaints of harassment, discrimination, other statutory violations, or similar claims."

-2-

In September 2011, Owen initiated this action against Bristol Care, alleging—on behalf of herself and other similarly situated current and former employees—that the company deliberately misclassified administrators like herself as "exempt" employees for the purposes of state and federal overtime laws, including the FLSA. Owen alleged that Bristol Care required these employees to work more than forty hours per week without overtime compensation. Bristol Care moved to stay district court proceedings and compel arbitration in accordance with the MAA and the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §§ 3-4. The district court denied Bristol Care's motion, holding that, although Owen's allegations fell within the scope of the agreement, the MAA was nonetheless invalid because of the class waiver. In reaching this conclusion, the district court explained that the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 563 U.S. ---, 131 S. Ct. 1740 (2011), upholding the enforceability of a class waiver in a consumer contract, was not controlling in the employment context. The district court instead relied on the recent National Labor Relations Board ("NLRB") decision, *In re D.R. Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012), and a district court decision from the Southern District of New York, *Chen-Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394 (S.D.N.Y. 2011), and concluded that class waivers are invalid in FLSA cases because the FLSA provides for the right to bring a class action.

On appeal, Bristol Care contends that neither the language nor legislative history of the FLSA indicates that the class waiver is impermissible, that other courts have found that the FLSA does not prohibit the waiver of class actions in an arbitration agreement, and that allowing class waivers is consistent with pro-arbitration Supreme Court precedent. Bristol Care also argues that the district court erred in relying on *D.R. Horton* and *Chen-Oster*.

## II. DISCUSSION

This court reviews a determination concerning the arbitrability of a dispute *de novo*. *Farber v. Menard, Inc.*, 367 F.3d 1048, 1051 (8th Cir. 2004). Section 2 of the FAA provides that "[a] written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has stated repeatedly that this provision establishes a "liberal federal policy favoring arbitration agreements." *CompuCreditCorp. v. Greenwood*, 565 U.S. ---, 132 S. Ct. 665, 669 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Concepcion*, 131 S. Ct. at 1745; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

Section 2 requires courts to enforce arbitration agreements according to their terms. *Dean Witter Reynolds, Inc., v. Byrd*, 470 U.S. 213, 221 (1985). As a result, there must be a "contrary congressional command" for another statute to override the FAA's mandate. *CompuCredit*, 132 S. Ct. at 669 (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes." *Gilmer*, 500 U.S. at 26; *see also CompuCredit*, 132 S. Ct. at 672 ("When [Congress] has restricted the use of arbitration . . . it has done so with clarity."). The burden is on the party challenging the arbitration agreement to show that Congress intended to preclude a waiver of the judicial forum. *Gilmer*, 500 U.S. at 26.

Here, Owen identifies nothing in either the text or legislative history of the FLSA that indicates a congressional intent to bar employees from agreeing to arbitrate FLSA claims individually, nor is there an "inherent conflict" between the

FLSA and the FAA. In short, the FLSA contains no "contrary congressional command" as required to override the FAA.

Owen attempts to overcome this obstacle in several ways. First, Owen contends that § 216(b) of the FLSA creates a right to pursue a class action because it identifies "[t]he *right* . . . to bring an action by or on behalf of any employee, and the *right* of any employee to become a party plaintiff to such any action." 29 U.S.C. § 216(b) (emphasis added). However, the FLSA also states that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing." *Id.* Even assuming Congress intended to create some "right" to class actions, if an employee must affirmatively opt in to any such class action, surely the employee has the power to waive participation in a class action as well. In any event, this provision falls short of the "contrary congressional command" required to override the FAA.

Second, Owen argues that the legislative history indicates a congressional command to override the FAA. In making this argument, Owen points to statements made during the passage of another labor relations statute—the National Labor Relations Act ("NLRA") in 1935—as evidence that Congress intended to protect workers' rights to engage in concerted action. Owen contends that Congress passed the NLRA "to 'secur[e] for employees the full right to act collectively' to ensure that 'employers and employees should possess equality of bargaining power.'" She also argues that in passing the NLRA, Congress intended to build upon the Norris-LaGuardia Act, which was passed three years earlier to "prevent employers from imposing contracts on employees that would require employees to forgo engaging in collective actions." Owen contends that the passage of that Act amounted to a congressional declaration that it was the "'public policy of the United States' . . . to protect workers' rights to engage in concerted activities" and that this declaration came "seven years after the passage of the FAA." *See* 29 U.S.C. § 102. She also points to language in the Norris-LaGuardia Act expressly repealing any acts or portions of acts that conflict with its protections. *See* 29 U.S.C. § 115. Missing from

this analysis, however, is the fact that although the FAA originally was enacted in 1925, it was *reenacted* in 1947. *See Gilmer*, 500 U.S. at 24. This reenactment came twelve years *after* the NLRA and *fifteen* years after the passage of the Norris-LaGuardia Act. Further, the FAA's reenactment also occurred nine years after the passage of the FLSA in 1938. The decision to reenact the FAA suggests that Congress intended its arbitration protections to remain intact even in light of the earlier passage of three major labor relations statutes. Thus, there is no inconsistency between either the FLSA text or its legislative history and the conclusion that arbitration agreements containing class waivers are enforceable in cases involving the FLSA.

Finally, in arguing that there is an inherent conflict between the FLSA and the FAA, Owen relies on the NLRB's recent decision in *D.R. Horton*,[1] which held a class waiver unenforceable in a similar FLSA challenge based on the NLRB's conclusion that such a waiver conflicted with the rights protected by Section 7 of the NLRA. 2012 WL 36274, at *2. The NLRB stated that Section 7's protections of employees' right to pursue workplace grievances through concerted action includes the right to proceed as a class. *Id.* However, *D.R. Horton* carries little persuasive authority in the circumstances presented here. First, the NLRB limited its holding to arbitration agreements barring *all* protected concerted action. *Id.* at *16. In contrast, the MAA does not preclude an employee from filing a complaint with an administrative agency such as the Department of Labor (which has jurisdiction over FLSA claims, *see* 29 U.S.C. § 204), the Equal Employment Opportunity Commission, the NLRB, or any similar administrative body. *Cf. Gilmer*, 500 U.S. at 28 (upholding an arbitration agreement that allowed Age Discrimination in Employment Act claimants to pursue

---

[1] Although the district court also relied on *Chen-Oster* (and the case is cited by the *amici curiae*), Owen does not rely on it on appeal. Therefore, noting that the decision in *Chen-Oster* is not binding on this court, we decline to consider arguments raised only by the *amici curiae*. *See Carter v. Lutheran Med. Ctr.*, 87 F.3d 1025, 1026 (8th Cir. 1996) (per curiam).

their claims before the Equal Employment Opportunity Commission). Further, nothing in the MAA precludes any of these agencies from investigating and, if necessary, filing suit on behalf of a class of employees. Second, even if *D.R. Horton* addressed the more limited type of class waiver present here, we still would owe no deference to its reasoning. *Delock v. Securitas Sec. Servs. USA*, No. 4:11-CV-520-DPM, 2012 WL 3150391, --- F. Supp. 2d ---- (E.D. Ark. Aug. 1, 2012), at *3 ("The Board's construction of the [NLRA] 'is entitled to considerable deference and must be upheld if it is reasonable and consistent with the policies of the Act,' . . . the Board has no special competence or experience in interpreting the Federal Arbitration Act." (quoting *St. John's Mercy Health Sys. v. NLRB*, 436 F.3d 843, 846 (8th Cir. 2006))). The NLRB also attempted to distinguish its conclusion from pro-arbitration Supreme Court decisions such as *Concepcion*. *D.R. Horton*, 2012 WL 36274, at *16. This court, however, is "not obligated to defer to [the Board's] interpretation of Supreme Court precedent under *Chevron* or any other principle." *Delock*, 2012 WL 3150391, at *3 (quoting *N.Y. N.Y. LLC v. NLRB*, 313 F.3d 585, 590 (D.C. Cir. 2002)). Additionally, although no court of appeals has addressed *D.R. Horton*,[2] nearly all of the district courts to consider the decision have declined to follow it.[3]

---

[2] We note, however, that an appeal of the NLRB's decision in *D.R. Horton* is currently pending in the Fifth Circuit. *D.R. Horton, Inc. v. NLRB*, No. 12-60031 (5th Cir. filed Jan. 13, 2012).

[3] *See, e.g.*, *Carey v. 24 Hour Fitness USA, Inc.*, Civil Action No. H-10-3009, 2012 WL 4754726 (S.D. Tex. Oct. 4, 2012); *Tenet Healthsystem Phila., Inc. v. Rooney*, No. 12-mc-58, 2012 WL 3550496 (E.D. Pa. Aug. 17, 2012); *Reyes v. Liberman Broadcasting, Inc.*, 146 Cal. Rptr. 3d 616 (C.D. Cal. 2012); *Morvant v. P.F. Chang's China Bistro, Inc.*, No. 11-CV-05405YGR, 2012 WL 1604851, at *8–12 (N.D. Cal. May 7, 2012); *Delock*, 2012 WL 3150391, at *1–6; *LaVoice v. UBS Fin. Servs., Inc.*, No. 11-civ-2308(BSJ)(JLC), 2012 WL 124590, at *6 (S.D.N.Y. Jan 13, 2012). *But see Herrington v. Waterstone Mortg. Corp.*, No. 11-cv-779-bbc, 2012 WL 1242318 (W.D. Wis. Mar. 16, 2012); *Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011).

Finally, our conclusion is consistent with all of the other courts of appeals that have considered this issue and concluded that arbitration agreements containing class waivers are enforceable in FLSA cases. *See, e.g.*, *Vilches v. Traveler's Cos.*, 413 F. App'x 487, 494 n.4 (3d Cir. 2011); *Horenstein v. Mortg. Mkt., Inc.*, 9 F. App'x 618, 619 (9th Cir. 2011); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005); *Carter v. Countrywide Credit Indus. Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002); *see also Delock*, 2012 WL 3150391, at *1 (explaining that it has generally "seemed settled law that an employee's statutory right to pursue a wage claim as part of a collective action . . . could be waived in favor of individual arbitration"). These decisions also are consistent with more than two decades of pro-arbitration Supreme Court precedent. *See, e.g.*, *CompuCredit*, 132 S. Ct. 665; *Concepcion*, 131 S. Ct. 1740; *Gilmer*, 500 U.S. 20. Owen places considerable weight on the fact that *Concepcion* and *CompuCredit* involved contracts for consumer goods rather than for employment. Yet, the Court in *Gilmer* upheld a similar class waiver in an employment complaint brought under the Age Discrimination in Employment Act. *See* 500 U.S. at 32. Thus, the Court's conclusion in *Gilmer* forecloses the argument that Supreme Court precedent upholding the enforceability of class waivers is limited to the consumer context.

Therefore, given the absence of any "contrary congressional command" from the FLSA that a right to engage in class actions overrides the mandate of the FAA in favor of arbitration, we reject Owen's invitation to follow the NLRB's rationale in *D.R. Horton* and join our fellow circuits that have held that arbitration agreements containing class waivers are enforceable in claims brought under the FLSA.

## III. CONCLUSION

Because we conclude that the class waiver in the MAA is enforceable, we reverse the district court's decision and direct the district court to enter an order granting Bristol Care's motion to stay proceedings and compel arbitration.

———————————————