[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13528
_____

D.C. Docket No. 6:10-cv-00464-JA-KRS

CANDACE NALL,

Plaintiff - Appellant,

versus

MAL-MOTELS, INC.,
MOHAMMAD MALIK,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 29, 2013)

Before CARNES and WILSON, Circuit Judges, and HUCK,[*] District Judge.

CARNES, Circuit Judge:

_____

[*] Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

This appeal grew out of an effort by two people to settle an FLSA lawsuit involving an overtime claim. They attempted to settle the litigation without the advice and assistance of attorneys, which only led to the involvement of attorneys and more litigation. The case presents issues about how a lawsuit involving an FLSA claim can be settled, and it demonstrates how a few dollars saved can lead to a lot more dollars spent.

## I.

Candace Nall first worked for Mal-Motels, which is owned by Mohammad Malik, from 2005 to 2006. After taking another job in 2006, she returned to Mal-Motels in August 2008 to work as a front desk clerk and night auditor. For the first four months or so after she returned, Nall used a time clock to keep track of the hours she worked. In December 2008, however, Malik told her to stop using the time clock and said that he would pay her a "salary" of $8.75 per hour. Nall started verbally reporting her hours to Malik, and he would call in her hours to a payroll company, which would issue a paycheck based on what he reported to it. There are no accurate written records of the hours that Nall actually worked.

Nall claims that she "periodically" worked more than forty hours per week but was not paid one and one-half times her regular hourly wage for that overtime work, which was in violation of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1). She contends that Mal-Motels owes her at least $3,780 in unpaid

2

overtime, plus another $3,780 in liquidated damages, for a total of $7,560. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages."). For those figures, Nall relies on the motel's guest registration logs, which she argues show that she worked more than forty hours per week. Mal-Motels concedes that it owed Nall some unpaid overtime (which would also mean some liquidated damages), but it disputes the number of hours that she worked and the amount of damages owed.

Nall quit her job at Mal-Motels in February 2010 because she was not being paid for her overtime. She obtained an attorney, and on March 29, 2010, he filed a lawsuit on her behalf against Malik and Mal-Motels, claiming a violation of the Fair Labor Standards Act. On April 28, 2010, Malik, without the assistance of an attorney, filed an answer for himself and for Mal-Motels. That answer was stricken and a default entered as to Mal-Motels because Malik, as a non-lawyer, could not represent it in the lawsuit.

In May 2010, still acting without an attorney, Malik called Nall about settling her lawsuit. The two of them agreed to meet at the motel. Malik told Nall not to bring her attorney, and she didn't. When the two of them met and talked, Malik told Nall that she was "ruining his business" and that it would be better for

3

him if she would settle the case.  He presented her with two documents to sign and offered her a check for one thousand dollars and another one or two thousand dollars in cash if she agreed to sign them and dismiss her lawsuit.[1]  Malik did not allow Nall to read the documents he was asking her to sign, but the magistrate judge found that he explained them to her and there is no contention that the explanation was inaccurate.  Nall testified that even though she felt that Malik was pressuring her, she agreed to sign the two documents that he gave her because she trusted him and she "was homeless at the time and needed money."

The documents that Nall signed were a voluntary dismissal with prejudice of her complaint and a letter to her attorney informing him that the case had been settled.  They had been prepared by a non-attorney legal assistant Malik sometimes used to prepare documents for his business.  There was no written settlement agreement.  On June 2, 2010, the voluntary dismissal document Nall had signed was filed (the record does not indicate by whom) in district court.  On June 8, 2010, however, the court issued an order (apparently on its own motion) stating that because Nall's complaint had been filed by an attorney and she had not received permission to appear without that attorney, her pro se voluntary dismissal with prejudice "has no effect and [the complaint] remains pending."

---

[1] At the hearing before the magistrate judge, Malik testified that he gave Nall $2,000 in cash, but Nall testified that he gave her only $1,000.  The district court did not resolve that factual dispute, which does not matter to the result in this appeal anyway.

Shortly thereafter, Malik hired a lawyer to represent him and Mal-Motels in the case. The lawyer filed a motion to set aside the default as to Mal-Motels, which the district court granted, and he also filed a "motion to enforce the settlement agreement." A magistrate judge held an evidentiary hearing on that motion. At the hearing, Malik and Nall gave conflicting testimony about the number of hours of overtime that Nall had worked, and they also testified about the circumstances surrounding the settlement agreement. After the hearing, the magistrate judge issued a report recommending that the district court approve the settlement and dismiss the case with prejudice because the agreement that Nall and Malik had reached was "a fair and reasonable resolution of a bona fide dispute under the FLSA."[2] The district court adopted the magistrate judge's report and recommendation, overruled Nall's objections to it, and dismissed her complaint with prejudice. This is her appeal of that judgment of dismissal.

II.

In Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982), we held that "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." 679 F.2d at 1352. The first is under the supervision of the Secretary of Labor. Id. at 1353; 29 U.S.C.

---

[2] The magistrate judge also determined that the settlement agreement was enforceable under Florida law, and the district court agreed. Neither party has raised the enforceability of the agreement under state law as an issue on appeal, and we therefore express no opinion on what effect, if any, state law principles have on the enforceability of a settlement of a FLSA claim.

§ 216(c).  The second, which is "[t]he only other route for compromise of FLSA claims[,] is provided in the context of suits brought directly by employees against their employer . . . to recover back wages for FLSA violations."  Lynn's Food, 679 F.2d at 1353.  In those lawsuits, the parties may "present to the district court a proposed settlement" and "the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."  Id.

The parties, the magistrate judge, and the district court all assumed that Lynn's Food applies to this case, but Lynn's Food involved a settlement agreement between employees and their current employer.  Id. at 1352–53.  The decision in that case recognized Congress' concern that "there are often great inequalities in bargaining power between employers and employees."  Id. at 1352.  It would seem that the most cause for concern exists when the plaintiff employee is still working for the defendant employer.  An employee is subject to the supervision and personnel decisions of her employer and the possibility of retaliation may pervade the negotiations.  That is not this case, however, because Nall no longer worked for Mal-Motels when she negotiated the settlement agreement with Malik, or when she filed the lawsuit for that matter.

Still, we believe that the rule of Lynn's Food applies to settlements between former employees and employers.  The Lynn's Food decision relied on Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895 (1945).  In that decision, the

6

Supreme Court held that a plaintiff cannot waive her right to liquidated damages in a FLSA settlement when there is no genuine dispute about whether she is entitled to them. Id. at 706, 65 S.Ct. at 902. In reaching that holding, the Court reasoned that by enacting the FLSA, Congress intended "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." Id. Liquidated damages, the Court said, are an important way of enforcing that protection, because "[k]nowledge on the part of the employer that he cannot escape liability for liquidated damages by taking advantage of the needs of his employees tends to insure compliance in the first place." Id. at 709–10, 65 S.Ct. at 903.

Those same public policy justifications led the Court to place limits on the ability of private parties to settle FLSA lawsuits. See id. at 704–05, 65 S.Ct. at 900–01 ("It has been held in this and other courts that a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy."). In the Court's view, permitting "an employer to secure a release from the worker who needs his wages promptly will tend to nullify the deterrent effect which Congress plainly intended that [the FLSA] should have." Id. at 709–10, 65 S.Ct. at 903. Given the "often great inequalities in bargaining power between employers and employees," mandatory protections "not subject to negotiation or bargaining between employers

7

and employees" are needed to ensure that an employer — who has a strong bargaining position — does not take advantage of an employee. Lynn's Food, 679 F.2d at 1352 (citing Brooklyn Sav. Bank, 324 U.S. at 706–08, 65 S.Ct. at 902). Allowing the employer to escape liquidated damages by simply giving an employee the wages she was entitled to earn in the first place — or in some cases, less than that — would undermine the deterrent effect of the statutory provisions.

Ensuring that each FLSA plaintiff receives the damages, including liquidated damages, to which she is statutorily entitled is no less important when the plaintiff is a former employee. One of the cases that was consolidated for decision in Brooklyn Savings Bank involved a plaintiff who had accepted a settlement for unpaid overtime wages more than two years after he had stopped working for the employer defendant. Brooklyn Sav. Bank, 324 U.S. at 699–700, 65 S.Ct. at 898–99. The Supreme Court's decision that the settlement of that former employee's claim was invalid means that the limitations on settlement of FLSA claims apply to settlements by former employees as well as current employees. And that makes sense. The purposes of the FLSA are undermined whenever an employer is allowed to escape liability for violations of the statute, regardless of whether those who were victimized by those violations are still employees. See id. at 707, 65 S.Ct. at 902 ("No one can doubt but that to allow

waiver of statutory wages by agreement would nullify the purposes of the [FLSA].").

### III.

Having decided that the Lynn's Food requirements apply here, the next question is whether the settlement in question met them. It is not a difficult question. The agreement between Nall and Malik was not made under the supervision of the Secretary of Labor, so it is valid only if the district court entered a "stipulated judgment" approving it. Lynn's Food, 679 F.2d at 1352–54. The court did enter a judgment approving the settlement, but it was not a stipulated one.

Lynn's Food did not define the term "stipulated judgment," and we do not have any decisions defining it in this context. But it takes two (or more) to stipulate, and a judgment to which one side objects is not a stipulated one. When the magistrate judge held an evidentiary hearing on whether to approve the settlement agreement, Nall's attorney objected to approval, contending that the terms were not fair and reasonable. When a plaintiff's attorney asks the district court to reject a settlement agreement that was reached without the attorney's knowledge or participation, whatever else the judgment approving the agreement may be, it is not a "stipulated judgment" within the meaning of Lynn's Food. Cf. Lynn's Food, 679 F.2d at 1354 (noting that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA" because the

9

employees are "likely to be represented by an attorney who can protect their rights under the statute" when the settlement is reached within the "adversarial context" of a lawsuit).[3]

The district court should not have granted the opposed motion to approve and enforce the settlement agreement and dismissed the complaint. The district court judgment is vacated and the case is remanded for further proceedings consistent with this opinion.[4]

**VACATED AND REMANDED.**

---

[3] We need not decide whether a judgment approving an out-of-court agreement entered with the assistance of counsel is a stipulated judgment even if the attorney later objects. That issue is not before us. Likewise, we need not decide whether the terms of the agreement in this case would have satisfied the additional requirement that the agreement be "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." See Lynn's Food, 679 F.2d at 1355.

[4] We note that on remand it may be necessary for the district court to make a factual finding about how much money Nall has already received from Malik in the unsuccessful settlement attempt so that amount may be set off against the amount of any future judgment for Nall.