[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11309
_____

D.C. Docket No. 1:12-cv-01491-AT

ASHLEY WALTHOUR,
KEVIN CHAPPELL,
on behalf of themselves and all others similarly situated,

Plaintiffs-Appellants,

versus

CHIPIO WINDSHIELD REPAIR, LLC,
KINGCO PROMOTIONS, INC.,
LEVAUGHN HALL,
JOHN DOES I-X,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 21, 2014)

Before HULL and BLACK, Circuit Judges, and WALTER,[*] District Judge.

HULL, Circuit Judge:

Plaintiffs-appellants Ashley Walthour and Kevin Chappell appeal the district court's order compelling arbitration and dismissing their complaint filed against defendants-appellees Chipio Windshield Repair, LLC; Kingco Promotions, Inc.; Levaughn Hall; and several "John Does." This appeal presents the question of whether an arbitration agreement, which waives an employee's ability to bring a collective action under the Fair Labor Standards Act, is enforceable under the Federal Arbitration Act. After careful review and with the benefit of oral argument, we affirm the district court's order compelling arbitration.

## I. BACKGROUND

The underlying action arises out of plaintiffs Ashley Walthour's and Kevin Chappell's ("plaintiffs") employment with defendants Chipio Windshield Repair; Kingco Promotions, Inc.; and Levaughn Hall (collectively the "Chipio defendants").

In August 2011, plaintiffs began working for the Chipio defendants as "Window Repairers." "Window Repairers" perform "manual labor associated with repairing automobile windshields, work[] in Defendants' office, and driv[e] to

---

[*]Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

2

locations where such window repairs [a]re made." According to plaintiffs, the Chipio defendants did not pay plaintiffs the required minimum wage of $7.25 per hour or overtime wages for the hours they worked in excess of 40 hours per a week.

In October 2011, soon after the Chipio defendants hired plaintiffs, defendant Kingco Promotions entered into separate, identical arbitration agreements (the "Arbitration Agreements") with plaintiffs. The Chipio defendants assert that Kingco Promotions was actually plaintiffs' employer and that defendants Chipio Windshield Repair and Hall were not plaintiffs' employer. However, for the purposes of this appeal and the Chipio defendants' motion to compel arbitration, both the Chipio defendants and plaintiffs have treated all three defendants— Kingco Promotions, Chipio Windshield Repair, and Hall—collectively as plaintiffs' employer.[1] And, plaintiffs and all three Chipio defendants have treated the arbitration agreement, signed by defendant Kingco Promotions, as applying to all three Chipio defendants.

---

[1]In reviewing the dismissal of a complaint due to an arbitration agreement, we accept plaintiffs' well-pleaded facts as true, including plaintiffs' claim that all three Chipio defendants were collectively plaintiffs' employer. Solymar Invs. Ltd. v. Banco Santander S.A., 672 F.3d 981, 985 & n.1 (11th Cir. 2012). However, nothing herein resolves that disputed issue.

Plaintiffs, each as "Employee," and the Chipio defendants, as "Employer," agreed that any kind of employment disagreement would be submitted to binding arbitration as follows:

> all claims, disputes, controversies, or disagreements of any kind whatsoever arising out of or relating to any employment at-will agreement entered into between the parties, and/or Employee's employment with Employer, and which may have occurred prior to or after entering into this arbitration agreement . . ., shall be submitted to binding arbitration.  Employer and Employee agree that the requirement to arbitrate shall also apply to any claim that may arise out of or relate to Employee's employment and which Employee may assert against Employer's employees, officers, directors, agents, suppliers or service providers, in their capacity as such . . . .

In their Arbitration Agreements, plaintiffs also agreed that they may bring claims only individually, not as class members, and that they were giving up their rights to participate in a class or other representative action as follows:

> The arbitrator will have no authority to consider a class action by one or more employees or otherwise preside over any form of a representative or class proceeding.  The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration.  The award of the arbitrator may be enforced in any court of competent jurisdiction.  BY SIGNING THIS AGREEMENT, EMPLOYEE AND EMPLOYER ARE EACH GIVING UP HIS/HER/ITS RIGHT TO A JURY TRIAL AND HIS/HER/ITS RIGHT TO PARTICIPATE IN A CLASS ACTION BECAUSE ALL CLAIMS WILL BE RESOLVED EXCLUSIVELY THROUGH ARBITRATION.  EMPLOYEE AND EMPLOYER AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN HIS/HER/ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. . . .

4

Plaintiff Walthour's employment with the Chipio defendants ended in April 2012, and plaintiff Chappell's employment with the Chipio defendants ended in December 2011.

On April 30, 2012, plaintiffs Walthour and Chappell brought a putative collective action against the Chipio defendants, pursuant to the Fair Labor Standards Act ("FLSA") § 16(b), 29 U.S.C. § 216(b).   Plaintiffs' complaint alleges that the Chipio defendants (1) did not pay minimum wages to them, in violation of FLSA § 6, 29 U.S.C. § 206; (2) did not compensate them for the time that they worked in excess of 40 hours per week, in violation of FLSA § 7, 29 U.S.C. § 207; and (3) did not make adequate and accurate records of their wages and hours, in violation of FLSA §§ 11(c) and 15(a)(5), 29 U.S.C. §§ 211(c) and 215(a)(5) and 29 C.F.R. § 516.

After plaintiffs filed their complaint, the Chipio defendants filed (1) a motion to compel arbitration pursuant to the terms of the Arbitration Agreements and (2) a motion to dismiss the action or, alternatively, to stay the proceedings during the pendency of arbitration.   Plaintiffs opposed the motions, arguing that their right to file a collective action under FLSA § 16(b) was a non-waivable,

substantive right and that the Arbitration Agreements were invalid because they purported to waive that right.[2]

The district court granted the Chipio defendants' motions and dismissed plaintiffs' complaint. The district court determined, <u>inter alia,</u> that, "in the absence of binding precedent holding that such a [waiver] provision is unenforceable as a matter of law," the Arbitration Agreements should be enforced, in light of the FAA's strong policy in favor of arbitration.

Plaintiffs timely filed this appeal.

## II.  DISCUSSION

### A.      The Federal Arbitration Act

The Federal Arbitration Act ("FAA") generally governs the validity of an arbitration agreement. <u>Caley v. Gulfstream Aerospace Corp.</u>, 428 F.3d 1359, 1367 (11th Cir. 2005).[3] The FAA was "enacted in 1925 as a response to judicial hostility to arbitration." <u>CompuCredit Corp. v. Greenwood</u>, 565 U.S. ___, ___, 132 S. Ct. 665, 668 (2012). The FAA thus "embodies a liberal federal policy

---

[2]Subsequently, seven former employees of the Chipio defendants consented in writing to being plaintiffs in the civil action brought by plaintiffs Walthour and Chappell, and these seven parties' consent forms were filed in the district court. The district court did not address whether these seven former employees could be joined as plaintiffs under § 16(b)'s collective action provision, in light of its ruling on the Chipio defendants' motions.

[3]We review <u>de novo</u> the district court's order to compel arbitration. <u>Caley</u>, 428 F.3d at 1368 n.6.

favoring arbitration agreements" and seeks "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." Caley, 428 F.3d at 1367 (internal quotation marks omitted).

The FAA's primary substantive provision provides that a written agreement to arbitrate a controversy arising out of that contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see Pendergast v. Sprint Nextel Corp., 691 F.3d 1224, 1231 & n.7 (11th Cir. 2012).

Consistent with the FAA's text, "courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes." Am. Express Co. v. Italian Colors Rest., 570 U.S. ___, ___, 133 S. Ct. 2304, 2309 (2013) (citation and internal quotation marks omitted). Importantly, the "overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." AT&T Mobility LLC v. Concepcion, 563 U.S. ___, ___, 131 S. Ct. 1740, 1748 (2011); see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682-83, 130 S. Ct. 1758, 1773-74 (2010) (recognizing that "the central or 'primary' purpose of the FAA is to ensure that

7

'private agreements to arbitrate are enforced according to their terms'" and that parties "may specify with whom they choose to arbitrate their disputes").

Here, plaintiffs and defendant Kingco agreed to resolve various claims by way of binding arbitration. The parties do not dispute that plaintiffs' FLSA claims against the Chipio defendants fall within the scope of the Arbitration Agreements. Further, there is no dispute that, in the Arbitration Agreements, plaintiffs explicitly waived their rights to any representative arbitration and agreed only to individual arbitration. The FAA, standing alone, requires enforcement of the Arbitration Agreements according to their terms, which, in this case, means individual, not collective, arbitration.

Plaintiffs, however, argue that the Arbitration Agreements are unenforceable because they contain a waiver of plaintiffs' statutory right to file a collective action under the FLSA. According to plaintiffs, the FLSA's text, legislative history and purposes show that the statutory right to bring a collective action under the FLSA is substantive and cannot be waived and that the FLSA has overridden the FAA's requirement that the collective action waivers in the Arbitration Agreements be enforced.[4] As we explain below, we require a contrary congressional command in the FLSA to override the FAA.

---

[4]Previously, in Caley, this Court concluded that an arbitration agreement that precluded class actions in a case alleging violations of the FLSA and other employment-related statutes was

8

Therefore, we examine (1) the contrary congressional command inquiry, (2) then discuss the FLSA, and (3) finally, determine whether plaintiffs have shown that the FLSA overrides the FAA.

## B.    The Contrary Congressional Command Inquiry

Like any statutory directive, the FAA's requirement that arbitration agreements be enforced according to their terms may be overridden by a "contrary congressional command." See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226, 107 S. Ct. 2332, 2337 (1987).[5] An arbitration agreement with a collective action waiver may be unenforceable, notwithstanding the FAA, where a statute, like the FLSA, "evinc[es] an intention to preclude a waiver of [collective]-action procedure" or, in other words, contains a "contrary congressional command." See Italian Colors Rest., 133 S. Ct. at 2308-10 (internal quotation marks and alteration omitted) (determining that no contrary congressional

---

enforceable. 428 F.3d at 1378. However, there, we addressed only whether an arbitration agreement that waived an employee's right to participate in a collective action was enforceable under Georgia contract law. Id. And, we did not explicitly address plaintiffs' different challenge concerning whether the FLSA itself precludes enforcement of such an arbitration agreement.

[5]This analysis is consistent with the interpretative principle that courts are "not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Morton v. Mancari, 417 U.S. 535, 551, 94 S. Ct. 2474, 2483 (1974).

command in the antitrust laws required the Supreme Court to reject a waiver of class arbitration and invalidate an arbitration agreement).

The burden is on the party opposing arbitration, here, plaintiffs, to show that Congress intended to preclude a collective action waiver in an arbitration agreement. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 1652 (1991) (providing that the burden is on the party opposing arbitration to show that "Congress intended to preclude a waiver of a judicial forum for [statutory] claims").

If a contrary congressional command exists, "it will be discoverable in the text of the [FLSA], its legislative history, or an 'inherent conflict' between arbitration and the [FLSA]'s underlying purposes." See id.; see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S. Ct. 3346, 3354 (1985) (stating that "[w]e must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history"). In undertaking this inquiry, "it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer, 500 U.S. at 26, 111 S. Ct. at 1652 (internal quotation marks omitted).

10

The Supreme Court's recent decision in CompuCredit sheds further light on what constitutes a "contrary congressional command." In CompuCredit, the Supreme Court held that the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 et seq., did not preclude enforcement of an arbitration agreement in a lawsuit alleging violations of the CROA"[b]ecause the CROA is silent on whether claims under the Act can proceed in an arbitrable forum." 132 S. Ct. at 673. The Supreme Court's opinion, agreed to by six justices, did not discuss the CROA's legislative history or whether there was an inherent conflict between the CROA and FAA. Rather, the Court relied on the text of the CROA to determine whether CROA claims could proceed in an arbitrable forum. The Court observed that, when Congress had previously prohibited arbitration clauses, "it ha[d] done so with a clarity that far exceeds the claimed indications in the CROA." Id. at 672 (citing 7 U.S.C. § 26(n)(2) (2006) (providing that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section")).

In CompuCredit, two other justices concurred in the judgment only, stating that they did "not understand the majority opinion to hold that Congress must speak so explicitly in order to convey its intent to preclude arbitration of statutory claims." 132 S. Ct. at 675 (Sotomayor, J. concurring). Rather, the concurring justices observed that the respondents had "identif[ied] nothing in the legislative

11

history or purpose of the Act that would tip the balance of the scale in favor of their interpretation." Id.

Although CompuCredit did not involve a waiver of the statutory right to bring a collective action under FLSA § 16(b), the decision suggests that the Supreme Court would focus primarily on the statutory text of the FLSA to determine whether that text precludes a waiver of the statutory right to bring a collective action. See 132 S. Ct. at 672-73; accord Italian Colors Rest., 133 S. Ct. at 2309-10. Indeed, "[i]n every case the Supreme Court has considered involving a statutory right that does not explicitly preclude arbitration, it has upheld the application of the FAA." D.R. Horton, Inc. v. NLRB, 737 F.3d 344, 357 n.8 (5th Cir. 2013) (internal quotation marks omitted). Accordingly, we turn to the text of the FLSA.

## C.    The Fair Labor Standards Act

The FLSA was enacted in 1938 for "the prime purpose of . . . aid[ing] the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 698, 707 n.18, 65 S. Ct. 895, 898, 902 n.18 (1945). Congress enacted the FLSA in recognition of the fact that, "due to the unequal bargaining power as between employer and employee, certain segments of the population required

12

federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce." Id. at 706-07, 65 S. Ct. at 902. "To accomplish this purpose standards of minimum wages and maximum hours were provided," and the policy considerations underlying those standards forbid waiver of those basic standards. Id. at 707, 65 S. Ct. at 902.

Section 16(b) of the FLSA explicitly provides that an employee may bring an action for FLSA violations "for and in behalf of himself . . . and other employees similarly situated," as follows:

> An action to recover [for violations of the FLSA's minimum wage and maximum hour requirements, FLSA §§ 6 and 7] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. . . . The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under [FLSA §§ 6, 7, or 17] in which [certain relief is sought].

FLSA § 16(b)-(c), 29 U.S.C. § 216(b)-(c) (emphases added). Under § 16(b), an action brought by a plaintiff employee "does not become a 'collective' action unless other plaintiffs affirmatively opt into the class by giving written and filed consent." Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1249

13

(11th Cir. 2003). And, "the right" provided by § 16(b) shall terminate if the Secretary of Labor files a complaint (1) to recover minimum wages or overtime compensation under §§ 6 or 7 or (2) to obtain certain injunctive relief under § 17. FLSA §§ 16(b)-(c), 17, 29 U.S.C. §§ 216(b)-(c), 217; see Donovan v. Univ. of Tex. at El Paso, 643 F.2d 1201, 1204 (5th Cir. May 1, 1981) (providing that § 17 allows the Secretary to seek broad injunctive relief and back wages for all affected employees without any requirement that they be specifically named in the complaint).[6]

The Supreme Court has previously examined the language used in FLSA § 16(b) in two lawsuits brought under the Age Discrimination in Employment Act ("ADEA"): Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 110 S. Ct. 482 (1989), and Gilmer, 500 U.S. 20, 111 S. Ct. 1647. Importantly, the ADEA expressly adopts the collective action language set forth in FLSA § 16(b). See 29 U.S.C. § 626(b).

Although Hoffman did not involve an arbitration agreement, the Supreme Court did examine the language of § 16(b), which the ADEA adopts. The Hoffman Court observed that "Congress has stated its policy that ADEA plaintiffs should have the opportunity to proceed collectively." Hoffmann-La Roche, 493

---

[6]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

14

U.S. at 170, 110 S. Ct. at 486.  The Supreme Court noted that the advantage of a collective action was "lower individual costs to vindicate rights by the pooling of resources."  Id.

The second case, Gilmer, did involve the enforceability of an arbitration agreement and speaks somewhat more to the issue here.  In Gilmer, the Supreme Court addressed whether an ADEA claim could be subject to compulsory arbitration, pursuant to an arbitration agreement, and engaged in the contrary congressional command inquiry.  Gilmer, 500 U.S. at 23, 111 S. Ct. at 1650.

Plaintiff Gilmer conceded that nothing in the text of the ADEA or its legislative history explicitly precluded arbitration.  Id. at 26, 111 S. Ct. at 1652.  Instead, Gilmer argued that compulsory arbitration of ADEA claims was "inconsistent with the statutory framework and purposes of the ADEA."  Id. at 27, 111 S. Ct. at 1652.  However, the Supreme Court found no inherent inconsistency between (1) enforcing arbitration agreements as to ADEA claims and (2) the ADEA's important social policies concerning promoting employment of older persons and prohibiting arbitrary age discrimination.  Id. at 27-28, 111 S. Ct. at 1652-53.

In arguing that arbitration was inconsistent with the ADEA, Gilmer also raised a "host of challenges to the adequacy of arbitration procedures."  Id. at 30, 111 S. Ct. at 1654.  One of these challenges was that arbitration procedures cannot

15

adequately further the purposes of the ADEA because they do not provide for class actions.  Id. at 32, 111 S. Ct. at 1655.

In Gilmer, the Supreme Court determined that the arbitration rules that would apply if Gilmer's claims proceeded to arbitration did, in fact, provide for collective proceedings.  Id.  However, the Supreme Court concluded that, even assuming that the enforcement of the arbitration agreement would result in the parties forgoing proceeding collectively, "the fact that the ADEA provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred."  Id. (internal quotation marks and brackets omitted).  The Supreme Court also observed that the arbitration agreements would not preclude the Equal Employment Opportunity Commission from bringing actions seeking class-wide relief.  Id.

The Supreme Court also rejected Gilmer's argument that arbitration agreements relating to ADEA claims were unenforceable due to unequal bargaining power between employers and employees.  Id. at 32-33, 111 S. Ct. at 1655.  The Supreme Court determined that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context."  Id. at 33, 111 S. Ct. at 1655.  The Supreme Court thus held that Gilmer had "not met his burden of showing that

16

Congress, in enacting the ADEA, intended to preclude arbitration of claims under that Act." Id. at 35, 111 S. Ct. at 1657.

Subsequently, in Italian Colors Restaurant, the Supreme Court relied on Gilmer in rejecting plaintiffs' claims that the waiver of class arbitration barred "effective vindication" of their federal statutory rights under the antitrust laws by removing their economic incentive to bring the antitrust claims. See 133 S. Ct. at 2310. The "effective vindication" exception, if applicable, may invalidate an arbitration agreement that "operate as a prospective waiver of a party's right to pursue statutory remedies." Id. (quotation marks and ellipsis omitted and alteration adopted).[7] The Supreme Court determined that the effective vindication exception did not apply because the class action waiver did not eliminate an individual plaintiff's right to pursue its own statutory remedies. Id. at 2311.

The Supreme Court relied on Gilmer in reaching this result and stated that, in Gilmer, it "had no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue, the [ADEA] expressly permitted collective actions." Id.[8] The Supreme Court observed that "statutory

---

[7]The effective vindication exception is not at issue in this case.

[8]Technically speaking, the Supreme Court in Gilmer did not state whether the arbitration agreement in that case included a collective action waiver and thus did not squarely address whether collective action waivers in arbitration agreements were enforceable as to ADEA claims.

17

permission did 'not mean that individual attempts at conciliation were intended to be barred.'" Id. (quoting Gilmer, 500 U.S. at 32, 111 S. Ct. at 1655) (first set of internal quotation marks omitted).

D.    The Validity of the Collective Action Waiver

After examining the FLSA's text, legislative history, purposes, and these Supreme Court decisions, we discern no "contrary congressional command" that precludes the enforcement of plaintiffs' Arbitration Agreements and their collective action waivers.  First, the FLSA contains no explicit provision precluding arbitration or a waiver of the right to a collective action under § 16(b).

Second, we reject plaintiffs' argument that the text of the FLSA overrides the FAA.  Plaintiffs argue that the FLSA overrides the FAA because § 16(b) of the FLSA uses the word "right" and the Supreme Court has recognized that § 16(b)'s language sets forth Congress's policy that plaintiffs should have the opportunity to proceed collectively.  In other words, plaintiffs argue that the "right" to a collective action is a non-waivable, substantive right.  However, the Supreme Court has already rejected a similar argument in Gilmer.

As interpreted in Italian Colors Restaurant, the Supreme Court in Gilmer had "no qualms" about enforcing an arbitration agreement that would result in the parties forgoing their right to proceed collectively, despite (1) the ADEA expressly permitting plaintiffs to bring collective actions, and (2) the Supreme Court's

18

recognition of Congress's policy that ADEA plaintiffs should have the "opportunity" to proceed collectively.  See Italian Colors Rest., 133 S. Ct. at 2311 (citing Gilmer, 500 U.S. at 32, 111 S. Ct. at 1655).

The Supreme Court's decision in Gilmer, as interpreted by Italian Colors Restaurant, addressed the ADEA, but applies with equal force to the FLSA, because, as noted above, the ADEA expressly adopts the FLSA's class action provision.  See 29 U.S.C. § 626(b); Adkins v. Labor Ready, Inc., 303 F.3d 496, 506 (4th Cir. 2002) (determining that the Supreme Court's conclusions on the ADEA could be applied to the FLSA and rejecting attempts to distinguish the FLSA and the ADEA).  Thus, based on these Supreme Court decisions read together, we conclude that the text of FLSA § 16(b) does not set forth a non-waivable substantive right to a collective action.  See Gilmer, 500 U.S. at 32, 111 S. Ct. at 1655; see also Italian Colors Rest., 133 S. Ct. at 2311 (interpreting Gilmer).  Additionally, we agree with the Eighth Circuit's reasoning in Owen v. Bristol Care, Inc., that "[e]ven assuming Congress intended to create some 'right' to class actions, if an employee must affirmatively opt in to any such class action, surely the employee has the power to waive participation in a class action as well." 702 F.3d 1050, 1052-53 (8th Cir. 2013) (analyzing FLSA § 16(b)).

Third, the portions of the FLSA's legislative history plaintiffs cite do not show that Congress intended the collective action provision to be essential to the

19

effective vindication of the FLSA's rights.[9]   Rather, the FLSA's legislative history supports only a general congressional intent to aid employees who lacked sufficient bargaining power to secure for themselves a "minimum subsistence wage."  We thus conclude that the legislative history of § 16(b) does not contain the requisite contrary congressional command sufficient to override the FAA.

Fourth, after reviewing the purposes of the FLSA, we conclude that the enforcement of collective action waivers in arbitration agreements is also not inconsistent with the FLSA.  Accord Gilmer, 500 U.S. at 26-27, 111 S. Ct. at 1652 (determining that the compulsory arbitration of ADEA claims pursuant to arbitration agreements is not inconsistent with the ADEA and that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context"); Adkins, 303 F.3d at 506 ("Since the Supreme Court has already held that the FAA is compatible with the ADEA . . . we reject Adkins'[s] structural argument that there is an inherent

---

[9]Plaintiffs cite statements by Justice Robert H. Jackson, then Assistant U.S. Attorney General, made during the hearings on the FLSA.  See Congress Fair Labor Standards Act of 1937: Hearing on S. 2475 and H.R. 7200 Before the S. Comm. on Education and Labor and the H. Comm. on Labor, 75th Cong. 69-70 (1937) (statement of Robert H. Jackson, Assistant U.S. Attorney General).  Justice Jackson's statements concerning the necessity of ensuring that FLSA plaintiffs had an "effective remedy" did not relate to § 16(b)'s collective action provision, but rather concerned a provision about employees' assignment of certain claims to a "Labor Standards Board," a provision that was not included in the final version of the FLSA.

20

conflict between the FAA and the FLSA.").[10] Due to the absence of a contrary congressional command in the FLSA, we conclude plaintiffs' Arbitration Agreements are enforceable under the FAA, including their collective action waivers.

Fifth, all of the circuits to address this issue have concluded that § 16(b) does not provide for a non-waivable, substantive right to bring a collective action. See Sutherland v. Ernst & Young LLP, 726 F.3d 290, 296-97 & n.6 (2d Cir. 2013) (determining that the FLSA does not contain a "contrary congressional command" that prevents an employee from waiving his or her ability to proceed collectively and that the FLSA collective action right is a waivable procedural mechanism); Owen, 702 F.3d at 1052-53 (determining that the FLSA did not set forth a "contrary congressional command" showing "that a right to engage in class actions overrides the mandate of the FAA in favor of arbitration"); Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 298 (5th Cir. 2004) (rejecting the plaintiffs' claim that their inability to proceed collectively deprived them of a substantive right to proceed under the FLSA because, in Gilmer, the Supreme Court rejected

---

[10]We add that it appears that the arbitration agreement would not preclude the Department of Labor from investigating the allegations in plaintiffs' complaint and filing suit on behalf of a class of employees, but we do not decide this question. See Owen, 702 F.3d at 1053-54 (determining that "nothing in the [arbitration agreement] precludes [the Department of Labor or other administrative agency] from investigating and, if necessary, filing suit on behalf of a class of employees"); Donovan, 643 F.2d at 1204 (determining that the government can seek class-wide relief for victims under FLSA § 17).

21

similar arguments regarding the ADEA); Adkins, 303 F.3d at 503 (determining that a plaintiff failed to point to any "suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to confer a non-waivable right to a class action under that statute" and that the plaintiff's "inability to bring a class action, therefore, cannot by itself suffice to defeat the strong congressional preference for an arbitral forum"); cf. D.R. Horton, 737 F.3d at 362 (determining that the National Labor Relations Act does not contain a contrary congressional command overriding the application of the FAA).[11]

Sixth, we also reject plaintiffs' argument that it is significant that Congress explicitly provided for the right to bring a collective action in the FLSA, rather than leaving it to the Federal Rules of Civil Procedure.  The Federal Rules of Civil Procedure do not provide for collective actions, and the requirements for pursuing a § 16(b) collective action "are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure."  Grayson v. K Mart Corp., 79 F.3d 1086, 1096 n.12 (11th Cir. 1996).  Congress's decision to specifically include the procedural right to a collective action in the FLSA does not somehow transform that procedural right into a substantive right.  Rather than

---

[11]In its order, the district court cited Skirchak v. Dynamics Research Corp., 508 F.3d 49 (1st Cir. 2007), as authority that conflicts with the other circuits that have addressed the issue we face today.  This is not so.  Rather, Skirchak held that the class action waiver at issue in that case was unconscionable under Massachusetts state law.  Id. at 61-62.  The First Circuit was clear in explaining that it did "not need to decide if class actions under the FLSA may ever be waived by agreement."  Id. at 62.

22

expand a plaintiff's substantive rights, Congress's decision to enact the collective action provision actually limited a plaintiff's existing procedural rights set forth in Rule 23. Were it not for § 16(b), a plaintiff could bring a representative FLSA action even without the prior consent of similarly situated employees. See Cameron-Grant, 347 F.3d at 1249.

**E.    Brooklyn Savings Bank v. O'Neil**

Before concluding, we address plaintiffs' reliance on the Supreme Court's 1945 decision in Brooklyn Savings Bank v. O'Neil. O'Neil is materially distinguishable from this case. There, the Supreme Court "held that a plaintiff cannot waive her right to liquidated damages in a FLSA settlement when there is no genuine dispute about whether she is entitled to them." Nall v. Mal-Motels, Inc., 723 F.3d 1304, 1307 (11th Cir. 2013) (citing O'Neil, 324 U.S. at 706, 65 S. Ct. at 902). The Supreme Court determined that liquidated damages were important to accomplishing the purposes of the FLSA because "[k]nowledge on the part of the employer that he cannot escape liability for liquidated damages by taking advantage of the needs of his employees tends to insure compliance in the first place." O'Neil, 324 U.S. at 709-10, 65 S. Ct. at 903. That case addressed the waiver of a substantive right, i.e., the individual employee's right to recover liquidated damages for violations of the FLSA. In this case, we address only the waiver of a litigation mechanism, i.e., the right to bring a collective action on

23

behalf of others.  See Caley, 428 F.3d at 1378 (providing that "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition, characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims" (citations and internal quotation marks omitted)).

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's order compelling arbitration and dismissing plaintiffs' complaint.

**AFFIRMED.**