CONCURRING IN PART AND DISSENTING IN PART
SUTTON, Circuit Judge,
concurring in part and dissenting in part.
When James DeCommer began working for Alternative Entertainment, the two entered into an employment contract in which they agreed to arbitrate any employment disputes on an individual, as opposed to a class-wide or joint, basis. In reaching this agreement, the employer and employee contracted to do just what the Federal Arbitration Act allows, indeed favors: to use the streamlined efficiency, informality, and low costs of arbitration to resolve any disputes that might arise during the course of the employment relationship. Case after case from the United States Supreme Court confirms the point, all while rejecting similar efforts to sidestep the imperatives of the Federal Arbitration Act, all while rejecting similar forms of hostility toward arbitration. See Am. Express Co. v. Italian Colors Rest., — U.S.-, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013); CompuCredit Corp. v. Greenwood, 565 U.S. 95, 132 S.Ct. 665, 181 L.Ed.2d 586 (2012); AT&T Mobility LLC *412 v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).
Today’s manifestation of hostility toward arbitration comes, oddly enough, from the National Labor Relations Board. That should surprise readers because the first Supreme Court decisions defending arbitration as a method of dispute resolution involved labor disputes in which unions used arbitration over the objections of industrial employers. See United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960). And this court has many decisions not only supporting arbitration but also making arbitration decisions nearly impervious to review in court, all to the end of respecting the labor-relations policies underlying the National Labor Relations Act, all at the urging of the Board. See, e.g., Mich. Family Res., Inc. v. Serv. Emps. Int’l Union Local 517M, 475 F.3d 746, 753-54 (6th Cir. 2007) (en banc); Titan Tire Corp. v. United Steelworkers, 656 F.3d 368, 373-75 (6th Cir. 2011).
In refusing to adhere to the mandate of the Federal Arbitration Act and in refusing to enforce today’s arbitration agreement, the court invokes Section 7 of the National Labor Relations Act, which gives employees the “right ... to engage in other concerted activities for the purpose of ... mutual aid or protection.” 29 U.S.C. § 157. The right to engage in “other concerted activities,” says the court, encompasses the right to engage in class actions and thus makes this arbitration agreement unenforceable and a violation of the NLRA to boot.
With respect, the theory errs at each turn. The FAA by its words applies to this agreement. A bevy of Supreme Court decisions confirms that it applies in this setting, including most pertinently in the context of class-action waivers. The NLRA does not make a general exception to the FAA for arbitration agreements or class-action waivers. And the NLRA does not specifically nullify such arbitration agreements through Section 7. As a matter of text and context, the right to engage in “other concerted activities” is the right of workers to support each other in collective bargaining and even in litigation, but not the right to file a representative class action or to invoke any other collective procedure. For these reasons and those elaborated below, I respectfully dissent.
Consider first the law that today’s decision nullifies. The Federal Arbitration Act says that arbitration agreements “shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2. It does not contain an exception for labor disputes or for the NLRA. Consistent with the straightforward policy reflected in the language of the FAA, courts (and administrative agencies), must “rigorously enforce arbitration agreements according to their terms.” Italian Colors, 133 S.Ct. at 2309 (quotation omitted).
Consider next how the Supreme Court has applied this language and policy. In recent years, the Court has not hesitated to apply the FAA to enforce class-action waivers. See Concepcion, 563 U.S. at 344, 131 S.Ct. 1740. Any other approach, the Court reasoned, “sacrifices the principal advantage” of arbitration—its procedural informality—and thus “creates a scheme inconsistent with the FAA.” Id. at 344, 348, 131 S.Ct. 1740. That is today’s case: Con *413 cepcion respects precisely what today’s decision slights.
Nor has the Court hesitated to enforce the FAA in the context of federal workplace-rights statutes. The decisions uniformly permit workers to waive their rights to pursue lawsuits in federal court or use class-action and other collective-action procedures in pursuing relief. The Court has upheld application of the FAA in every case it has considered involving a statutory right “that [did] not explicitly preclude arbitration.” D.R. Horton, Inc. v. NLRB, 737 F.3d 344, 357 n.8 (5th Cir. 2013). That includes federal statutes, which must contain a “contrary congressional command” to override the FAA’s mandate, CompuCredit, 132 S.Ct. at 669, and more particularly that includes federal statutes that apply exclusively in the workplace. In Gilmer, a plaintiff argued that arbitration was inappropriate for Age Discrimination in Employment Act claims because the arbitrator might not permit collective procedures. 500 U.S. at 32, 111 S.Ct. 1647. Notably, the Court “had no qualms in enforcing a class waiver in an arbitration agreement even though ... the Age Discrimination in Employment Act [] expressly permitted collective actions.” Italian Colors, 133 S.Ct. at 2311 (discussing Gilmer). Every circuit to consider the question has concluded that an employee may waive the right to bring a collective action under the Fair Labor Standards Act, which includes the same collective-action provision as the Age Discrimination in Employment Act. See Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1336 (11th Cir. 2014); Sutherland v. Ernst & Young LLP, 726 F.3d 290, 296-97 & n.6 (2d Cir. 2013) (per curiam); Owen v. Bristol Care, 702 F.3d 1050, 1052-53 (8th Cir. 2013); Carter v. Countrywide Credit Indus., 362 F.3d 294, 298 (5th Cir. 2004); Adkins v. Labor Ready, Inc., 303 F.3d 496, 503 (4th Cir. 2002). The Second Circuit has enforced class-action waivers for Title VII claims, even where the plaintiff sought to bring a pattern-or-practice claim, which non-government plaintiffs in that circuit may bring only in class actions. Parisi v. Goldman, Sachs & Co., 710 F.3d 483, 488 (2d Cir. 2013).
Those are the relatively hard cases. Most other workplace-rights statutes are silent on collective action, and plaintiffs must rely on Rule 23 to bring a class action or Rule 20 to join their claims. The Court has made clear that these rules of procedure create “procedural right[s] only” (naturally enough), which makes them “ancillary to the litigation of substantive claims,” and thus makes them subject to waiver. Deposit Guar. Nat’l Bank v. Roper, 445 U.S. 326, 332, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).
Consider next the language of the National Labor Relations Act. Start with the easy point. The NLRA, all agree, does not create an express exemption from the FAA or expressly prohibit class-action waivers by name, not when the NLRA was first enacted in 1935 and not' through any subsequent amendments to it. In view of the Supreme Court’s FAA decisions over the last several years, that should end this case.
Nor does the NLRA indirectly create an exception to the FAA. By giving employees the “right ... to engage in other concerted activities for the purpose of ... mutual aid or protection,” 29 U.S.C. § 157, and by prohibiting employers from interfering with that right, id. § 158(a)(1), the NRLA does not cancel out the FAA. It’s not plausible that Congress was trying to create this exception to the FAA. Civil Rule 23 did not even exist then. Not until 1966 did the Federal Rules of Civil Procedure provide for class actions. That leaves the possibility that this language of the *414 NLRA, no matter the explanation for enacting it, no matter the laws then in existence, nullifies the FAA anyway and serves to protect an employee’s right to file a class action. I don’t think so.
We may read Section 7 to repeal the FAA only if the conflict between the two statutes is “irreconcilable.” Branch v. Smith, 538 U.S. 254, 273, 123 S.Ct. 1429, 155 L.Ed.2d 407 (2003). But the Board’s interpretation of Section 7 is not the only possible one; it’s not even the best one. The engine of the Board’s theory has two pistons. The first is that the right to engage in “other concerted activities” includes the right to bring a class action or other group lawsuit. The second is that the Board has authority to interpret the NRLA, and accordingly its interpretation of “concerted activities” must receive Chevron deference from the courts. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Both ideas misfire—first because the language of Section 7 is not sufficiently elastic to cover this theory and second because Chevron does not give the Board authority to nullify a statute (the FAA) over which it does not have interpretive authority.
The words “concerted activity” cover “mutually contrived or agreed on” activities. Merriam-Webster’s Collegiate Dictionary (11th ed. 2003); see also American Heritage Dictionary (5th ed. 2011) (“[pl]anned or accomplished together”); Webster’s New International Dictionary 553 (2d ed. 1942) (“[mjutually contrived or planned; agreed on”). As the Supreme Court has put it, Section 7 “embraces the activities of employees who have joined together in order to achieve common goals.” NLRB v. City Disposal Sys. Inc., 465 U.S. 822, 830, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984). Under that definition, all can agree that when a group of employees brings a lawsuit to achieve more favorable terms of employment, they are engaged in “concerted activity” for mutual aid or protection. Eastex, Inc. v. NLRB, 437 U.S. 556, 565-66 & n.15, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978); Brady v. Nat’l Football League, 644 F.3d 661, 673 (8th Cir. 2011).
The key question, which the Board and the majority do not confront, is what makes such a lawsuit “concerted.” The Board assumes that, when a court or arbitrator consolidates employees’ claims through a class action or joinder, the employees litigate concertedly. But the “con-certedness” of litigation does not turn on the particular procedural form that litigation takes. An activity is “concerted” as long as workers mutually plan and support it. Whether a group of employees brings a class action, joint claims, separate claims, or whether the group supports a single-plaintiff suit, their legal action is protected if they are substantively cooperating in the litigation campaign—say by pooling money, coordinating the timing of their claims, or sharing attorneys and legal strategy. These are the sort of collaborative activities—which employees can engage in of their own accord and not at the leave of a judge—that Section 7 protects.
The first canon of construction—that words are “known by the company they keep”—confirms this interpretation. Logan v. United States, 552 U.S. 23, 31, 128 S.Ct. 475, 169 L.Ed.2d 432 (2007). Consider the “concerted activities” language in context. Section 7 guarantees workers “the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.” 29 U.S.C. § 157. Employees engage in each of the listed activities—organization, *415 unionization, collective bargaining, electing representatives—on their own collective initiative. The same can be said about a group of employees filing a lawsuit or set of lawsuits against their employer. All of these self-directed, collaborative activities are part of the “freedom of association [and] self-organization” that Section 7 protects. Id. § 151. But class litigation is not something that employees just do. The use of collective procedures is limited by statute, by the rules of the forum, and, yes, by waiver. Section 7 prevents employers from interfering with employees’ attempts to assert their own interests through collective action; it does not create an affirmative right to use or pursue courtroom procedures that the law carefully limits.
The related canon of ejusdem generis— the principle that when a general term follows a list of specific terms, the general term should be understood to refer to subjects akin to the specific ones—also requires us to interpret “other concerted activities” more narrowly than the Board. Circuit City, 532 U.S. at 114-15, 121 S.Ct. 1302. We cannot leap from the independent, real-world activities that Section 7 enumerates to the highly regulated, courtroom-bound “activities” of class and joint litigation.
The Board’s interpretation of “concerted activities” does not even work on its own terms. Section 7 cannot do what the Board wants—guarantee a right to engage in the activity of a class action—because independent rules and statutes limit the use of those procedures. Employees cannot “mutually contrive or agree” to litigate as a class, or even to join their claims. A judge or arbitrator makes the decision to group claims together based on the procedural rules of the forum. A federal court may certify a class under Rule 23 only if it meets the numerosity and commonality requirements and only if the representative plaintiffs are typical of the class and will adequately protect its interests. In the more specific setting of the Fair Labor Standards Act or the Age Discrimination in Employment Act, a court may certify a class only if the plaintiffs who opt in are “similarly situated.” Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 547 (6th Cir. 2006). And a court may join claims under Rule 20'only if they arise out of the same transaction or occurrence. All of these procedural requirements must be met before plaintiffs can proceed collectively, no matter what Section 7 says. It would make little sense for the “concertedness” of a litigation campaign to turn on judicial decisions over which workers have no control. Employees participating in a litigation campaign are still “joined together in order to achieve common goals” even if their claims are kept separate. City Disposal, 465 U.S. at 830, 104 S.Ct. 1505.
Even if procedure were relevant to “concertedness,” there is nothing inherently “concerted” about the class action. The purpose of Rule 23 is to enable action on behalf of absent class members, who will be bound by the result unless they opt out of the class. A single plaintiff can litigate a class action to completion without any intervention by or material support from any other class members. This sort of representative action is not necessarily concerted. If anything, it risks undermining genuine group action by permitting the representative plaintiff to stand in for all nonparticipating parties.
In addition to failing to come to grips with the relevant language and above all the context in which it appears, the Board’s theory creates a bizarre alchemy. It would mean that Section 7 guarantees an employee the right to pursue a collective action—under, say, the Age Discrimination in Employment Act—that the AJDEA itself permits to be waived. Gil- *416 mer, 500 U.S. at 32, 111 S.Ct. 1647. The same would be true under the FLSA and Title VII. See Walthour, 745 F.3d at 1336; Parisi, 710 F.3d at 488. Statutory interpretation prioritizes the specific over the general. If Congress wanted to create un-waivable rights to pursue class actions or other collective lawsuits, it would place that right in the workplace-rights statutes themselves, not in the NLRA in 1935. The Board’s thepry is worse than assuming Congress would place elephants in mouse-holes. See Whitman v. Am. Trucking Ass’n, 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). It assumes that Congress forgot how to write statutes.
The Board seeks to sidestep these problems by saying that Section 7 “does not create a right to class certification or the equivalent, but ... it does create a right to pursue joint, class, or collective claims if and as available, without the interference of an employer-imposed restraint.” Murphy Oil USA Inc., 361 NLRB No. 72, at *2 (Oct. 28, 2014). But the pursuit of collective litigation is a different activity from collective litigation itself. And if the concerted activity protected by Section 7 is the pursuit of collective litigation, then the Board’s interpretation accomplishes nothing. Waivers do not inhibit the right to pursue a goal; they inhibit the ability to obtain it. In this case, employees who signed the class-action waiver can band together to lobby their employer to remove the waiver from the contract, or they can ask a court to declare the waiver invalid on some generally applicable ground. The employees’ pursuit of collective procedures may or may not bear fruit, but the pursuit will nonetheless be protected from retaliation.
If the right to pursue a certain outcome overcame an otherwise enforceable waiver, the Board’s theory would prove too much. Employees can collectively pursue any number of goals—take annual raises or more vacation days—that they might initially have waived in their employment contracts. Consider the right to a jury trial, another procedural right that employees waive by entering an arbitration agreement. Absent an arbitration agreement, a group of employees would be entitled to a jury trial after demanding one pursuant to Rule 38, in the same way that a group of employees might be entitled to class certification after filing a motion under Rule 23. But the fact that employees could collectively pursue and obtain a jury trial if they had not signed the arbitration agreement cannot render the agreement ineffective. Otherwise, Section 7 would invalidate all arbitration agreements. Similarly, the fact that employees could collectively pursue and (perhaps) obtain a class action by filing a certification motion cannot invalidate the class-action waiver. Again, Section 7 still gives employees the right to pursue a jury trial or a collective procedure by submitting a jury demand or certification motion and contesting the agreement’s validity. But the right to collectively pursue a certain goal cannot require courts to disregard otherwise valid waivers.
Chevron does not fix these problems. In the first place, the Board’s theory does not get out of the step-one gate. Chevron deference comes at the end, not the beginning, of the interpretive process. See Lech-mere, Inc. v. NLRB, 502 U.S. 527, 536-37, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992). For the reasons just given, the Board’s interpretation of Section 7 cannot be squared with the relevant language and its context.
In the second place, the Board “has not been commissioned to effectuate the policies of the Labor Relations Act so single-mindedly that it may wholly ignore other and equally important Congressional objectives.” S. S.S. Co. v. NLRB, 316 U.S. 31, *417 47, 62 S.Ct. 886, 86 L.Ed. 1246 (1942). By interpreting Section 7 to invalidate class-action waivers, the Board has produced a conflict with the Federal Arbitration Act, which instructs courts to “rigorously enforce arbitration agreements according to their terms.” Italian Colors, 138 S.Ct. at 2309 (quotation omitted).
The conflict between the Board’s D.R. Horton rule and the FAA means that the presumption against implied repeals sets in, and Chevron leaves the stage. Chevron deference comes into play only when a court finds a statute to be ambiguous after “employing traditional tools' of statutory construction.” Chevron, 467 U.S. at 843 n.9, 104 S.Ct. 2778. The presumption against implied repeals tells us to interpret ambiguous statutes to preserve earlier-enacted laws, and thus resolves any ambiguity in Section 7. In this setting, “there is, for Chevron purposes, no ambiguity in such a statute for an agency to resolve.” I.N.S. v. St. Cyr, 533 U.S. 289, 320 n.45, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).
The institutional rationale for Chevron deference is also missing in implied-repeal cases. When assessing whether “two statutes are capable of co-existence, it is the duty of the courts ... to regard each as effective.” Morton v. Mancari, 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). Because this determination requires the courts to interpret both statutes, there is no room to defer to the Board’s construction of the National Labor Relations Act, particularly a construction’ that repeals a statute outside the Board’s expertise and interpretive authority. See Nigg v. U.S. Postal Serv., 555 F.3d 781, 786 (9th Cir. 2009); In re Stock Exchs. Options Trading Antitrust Litig., 317 F.3d 134, 149 (2d Cir. 2003); Passamaquoddy Tribe v. Maine, 75 F.3d 784, 794 (1st Cir. 1996); see also Gordon v. N.Y. Stock Exch., Inc., 422 U.S. 659, 686, 95 S.Ct. 2598, 45 L.Ed.2d 463 (1975) (“[T]he détermination of whether implied repeal of the antitrust laws is necessary to make the Exchange Act provisions work is a matter for the courts.”).
Trying to keep a grip on Chevron deference, the Board and the majority maintain that any conflict between the D.R. Horton rule and the FAA is illusory. But the Board’s interpretation of Section 7 runs headlong into Concepcion. The inescapable conclusion is that, like the California Supreme Court’s prohibition on class waivers in consumer contracts, the Board’s prohibition on class waivers in employment contracts “creates a scheme inconsistent with the FAA.” Concepcion, 563 U.S. at 344, 131 S.Ct. 1740. It is particularly noteworthy in this respect that the California Supreme Court, in a thoughtful opinion by Justice Liu, recognizes that Concepcion forecloses the D.R. Horton rule. Iskanian v. CLS Transp. L.A., LLC, 59 Cal.4th 348, 173 Cal.Rptr.3d 289, 327 P.3d 129, 141 (2014).
The Board nonetheless claims that we can avoid the conflict through the FAA’s saving clause, which provides that courts may invalidate arbitration agreements “upon such grounds as exist at law or in equity for the revocation of any contract.” 9 U.S.C. § 2. Any employment contract is revocable on the grounds that it is illegal and, says the Board, Section 7 of the NLRA makes the class-action waiver illegal.
That is a repackaging of arguments Concepcion already rejected. The Court held that the FAA preempted the California Supreme Court’s holding that class-action waivers in consumer contracts of adhesion were unconscionable. The plaintiffs argued that the state-court rule fell within the saving clause because uncon-scionability is a generally applicable contract doctrine. Substitute “illegality” for *418 “unconscionability,” and you have the Board’s argument in today’s case. That did not work there. It should not work here. The Court did not buy the contention that the California Supreme Court’s decision was neutral with respect to arbitration. Unconscionability, like illegality, may be a generally applicable objection to any contract, but the California Supreme Court applied the doctrine in a way that interfered with the “fundamental attributes” of arbitration. Concepcion, 563 U.S. at 344, 131 S.Ct. 1740.
Just like the Board, the Concepcion plaintiffs also argued that the state-court rule did not single out arbitration agreements because it also applied to waivers of class litigation. Id. at 341, 131 S.Ct. 1740. But though the rule may have applied equally to litigation, there was no mistaking that it would have a “disproportionate impact on arbitration agreements.” Id. at 342, 131 S.Ct. 1740; see Kindred Nursing Ctrs. Ltd. P’ship v. Clark, 581 U.S.-, -, 137 S.Ct. 1421, 197 L.Ed.2d 806 (2017). The Court drove home the point by imagining other rules that would be formally neutral between arbitration and litigation but would clearly burden the former, including a thinly veiled jury requirement that made unconscionable any agreement that failed to provide for ultimate disposition by “a panel of twelve lay arbitrators.” Concepcion, 563 U.S. at 342, 131 S.Ct. 1740. These rules, like the California Supreme Court’s ban on class waivers, would stand as “obstacle[s] to the accomplishment of the FAA’s objectives,” and therefore could not be preserved by the saving clause. Id. at 343, 131 S.Ct. 1740. Accordingly, the Court found that the California Supreme Court’s ban on class waivers was preempted, despite its formal neutrality with respect to arbitration.
The Board and the majority correctly identify one difference between Concepcion and this case: The Board’s rule derives from a federal statute rather than state common law. But that hurts the Board’s position. Saving clauses save state laws from preemption, see, e.g., UNUM Life Ins. Co. v. Ward, 526 U.S. 358, 363, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999); they don’t save other federal statutes enacted by the same sovereign. Federal statutes do not need to be “saved” by a coequal statute in order to have effect. See Morris v. Ernst & Young, LLP, 834 F.3d 975, 991-92 (9th Cir. 2016), (Ikuta, J., dissenting), cert. granted,-U.S. --, 137 S.Ct. 809,196 L.Ed.2d 595 (2017).
No matter, the Board persists. Section 7 creates substantive rights, and the Federal Arbitration Act does not require courts to enforce arbitration agreements in which parties “forgo the substantive rights afforded by [a] statute.” Gilmer, 500 U.S. at 26, 111 S.Ct. 1647. But this argument asks a question; it does not answer the question. Sure, the Board may be correct that, if the right to pursue class-action procedures is guaranteed by Section 7, then the right is substantive and cannot be waived. But whether Section 7 guarantees that right is precisely the dispute. Because the D.R. Horton rule conflicts with the FAA, the D.R. Horton rule must yield. And because the Board has no interpretive authority over the FAA, it can’t use Chevron to inoculate its decision from fresh review. We ask not whether the Board’s interpretation is reasonable, but whether it is so clearly correct that no alternative is available. As we have just seen, the Board’s interpretation of Section 7 is not even the best one, much less the only possible one.
As for the rest of today’s decision, I agree with the majority that substantial evidence supports the National Labor Re *419 lations Board’s finding that DeCommer’s termination was unlawful.
For these reasons, I respectfully dissent.