JENNIFER WALKER ELROD, Circuit Judge:
The National Labor Relations Board determined that Convergys violated the National Labor Relations Act both by requiring job applicants to sign a class and collective action waiver and by subsequently seeking to - enforce the waiver. Convergys seeks review of the Board’s determination, arguing that it conflicts with our binding case- law. We GRANT Convergys’s petition for review and DENY the Board’s cross-application for enforcement. ■ •'
I.
Convergys requires job applicants to sigh an agreement that includes the following waiver:
I further agree that I will pursue any claim or lawsuit relating to my employment with Convergys (or any of its subsidiaries or related entities) as an individual, and will not lead, join, or serve as a member of a class or group of persons bringing such a claim or lawsuit.
Despite having signed this agreement, a Convergys employee brought class and collective Fair Labor Standards Act (FLSA) claims against the company in the District Court for the Eastern District of Mississippi. Convergys sought to enforce the waiver agreement by filing a motion to strike these claims. The employee filed charges with the National Labor Relations Board, asserting that the company interfered with the exercise of employee rights by maintaining and by enforcing the waiver agreement. The district court denied the company’s motion to strike, Convergys settled the FLSA lawsuit, and the employee requested to withdraw the charges she filed with the Board. However, the Board’s General Counsel issued a complaint alleging that Convergys had violated Section 8(a)(1) of the National Labor Relations Act (NLRA) both by requiring job applicants to sign the waiver and by seeking to enforce the waiver in the employee’s lawsuit.
*637 An Administrative Law Judge (ALJ) recommended a finding that Convergys had violated Section 8(a)(1) of the NLRA, relying on the Board’s prior decision in D. R. Horton, Inc., 367 NLRB 2277, No. 184 (2012). The ALJ’s reliance on this decision was subsequently undermined by our denial of enforcement in D. R. Horton, Inc. v. NLRB, 737 F.3d 344 (5th Cir. 2013) (Horton ). Nevertheless, the Board adopted the ALJ’s opinion, as modified, in a two-to-one decision.[1] The Board majority sought to distinguish Horton and to rely instead on other Board decisions recognizing a broad “right of employees to join together to improve their terms and conditions of employment through litigation.” Notwithstanding these Board decisions, the Board dissent would have relied on “the multitude of court decisions that have enforced class waivers,” including the Fifth Circuit’s Horton decision. The Board ordered'Con-vergys to cease and desist from requiring applicants to sign a waiver, to cease and desist from enforcing the waiver, and to take steps to ensure all applicants and current and former employees knew the waiver was no longer in force. Convergys petitioned for review of the Board’s decision, and the Board submitted a cross-application for enforcement of its order.
II.
Section 7 of the NLRA provides:
Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be • affected by. an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.
29 U.S.C. § 157. The threshold question in this case is whether Section 7’s guarantee of the right “to engage in other concerted activities for the purpose of ... other mutual aid or protection” contemplates a right to participate in class and collective actions. ■
This court has already rejected the Board’s position that Section 7 'guarantees a right to participate in class or collective actions, holding that the use of a class or collective action is a procedure rather than a substantive right.[2] Horton, 737 F.3d at 357;[3] id. at 361; see also id. at 362 (noting *638 that, under the Board’s interpretation, “the NLRA would have to be protecting a right of access to a procedure that did not exist when the NLRA was (re)enacted”). Despite our decision in Horton and similar rulings by a majority of circuits that have considered the issue,[4] the Board has persistently clung to its view that Section 7 guarantees a substantive right to participate in class and collective actions, and we have persistently déclined to enforce Board orders’based on this disregard of our law.[5] We recognize that the Supreme Court’s decision in NLRB v. Murphy Oil USA, Inc., cert. granted, — U.S. —, 137 S.Ct. 809, 196 L.Ed.2d 595 (2017), may resolve the issue shortly. In the meantime, however, we must apply our circuit’s binding precedent. See, e.g., Horton, 737 F.3d at 344; Murphy Oil, 808 F.3d at 1013.
In Horton, we considered the Board’s position that a class and collective action waiver violated the NLRA and determined that the waiver “must be enforced according to its terms.” Horton, 737 F.3d at 362. Because the waiver at issue appeared in an arbitration agreement, we inquired whether enforcement of the agreement under the Federal Arbitration Act (FAA)'was “precluded by another statute’s contrary congressional command.” Id. at 358. We recognized that a contrary congressional command could have been implicit-in a “conflict between the FAA and the NLRA’s purpose,” bqt explained that “we do not find.such a conflict.” Id. at 361.. The reason that the FAA and the NLRA did not conflict was that Section 7 could not be interpreted to create a substantive right to participate in class and collective actions— as we explained, “a substantive right to proceed collectively has been foreclosed by prior decisions.” Id. Thus, our determination in Horton that a class and collective action waiver is enforceable was based on the fact that “[t]he use of class action procedures ... is not a substantive right.” Id. at 357.
Because -our decision, in Horton was based on our interpretation of Section 7 and our reasoning was not limited to interpretation and application of the FAA, the Board’s argument that Horton is limited to the arbitration context is unpersuasive.[6] Horton's interpretation of Section 7 is *639 binding on this panel. See Jacobs v. Nat’l Drug Intelligence Ctr., 548 F.3d 375, 378 (5th Cir. 2008) (“[O]ne panel of our court may not overturn another panel’s decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court.”); see also Gochicoa v. Johnson, 238 F.3d 278, 286 n.11 (5th Cir. 2000) (“When confronting decisions of prior panels ... - we are bound by not only the result but also those portions of the opinion necessary to that result.”).
The Board’s argument that Section 7 creates a substantive'right to participate in class and collective actions ignores Horton’s contrary holding that “[t]he use of class action procedures . .v is not a substantive right.” Horton, 737 F.3d at 357. Moreover, the Board’s assertion that the waiver in Horton was permissible only because the FAA overrode the NLRA contradicts our determination in Horton that the statutes are not in conflict. See id, at 361. Finally, the Board’s suggestion that Horton is distinguishable because the FAA empowers arbitration agreements to waive rights that other agreements cannot waive is contrary to Supreme Court precedent, which holds that the FAA places arbitration agreements “on an equal footing with other contracts.” AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). For all these reasons, Horton precludes the Board’s position.
We observed in Horton that “a substantive right to proceed collectively has been foreclosed by prior decisions.” Horton, 737 F.3d at 361. That is why, even before Horton, a district court upheld the very waiver that is at issue in this case, explaining that “there is no logical reason to distinguish a waiver in the context of an arbitration agreement from a waiver in the context of any other contract” and that “class action waivers are upheld because they are contractual provisions that do not affect any substantive rights.” Palmer v. Convergys Corp., No. 7:10-CV-145, 2012 WL 425256, at *2 (M.D. Ga. Feb. 9, 2012). After our decision in Horton, the idea that Section 7 protects a substantive right to participate iii class and collective actions', is still more firmly foreclosed. Simply put, the Board’s position that Section 7 guarantees a substantive right of employees to participate in class and collective actions against their employers is contrary to our binding precedent.[7]
The dissenting opinion asserts that the Supreme Court, the Fifth Circuit, and the Board have each “made plain that class and collective actions constitute ‘other concerted activities’ within Section 7 of the NLRA.” However, the cases on which the dissenting opinion relies do not stand for this proposition.
The Supreme Court opinion on which the dissenting opinion relies is Eastex, Inc. v. NLRB, 437 U.S. 556, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978). This decision involved the right to distribute newsletters, but included a statement in dicta about the right to resort to administrative and judicial fora. Id. at 565-66, 98 S.Ct. 2505. The Supreme Court expressly declined to address “the question of what may constitute ‘concerted’ activities in [the litigation] context” for purposes of Section 7. Id. at 566 n.15, 98 S.Ct. 2505. Thus, Eastex did not make plain that class and collective actions in particular constitute “other concerted activities” for purposes of the NLRA.
The Fifth Circuit opinion on which the dissenting opinion relies is Altex Ready Mixed Concrete Corp. v. NLRB, 542 F.2d 295 (5th Cir. 1976). This case provides an example of a concerted activity *640 in- the litigation context, holding that a union’s filing of a civil action is protected by the NLRA. Id. at 297. It does not hold that the phrase “other concerted activities” contemplates participation in class and collective actions. As explained above, Horton has decided the question before us, and we are not free to adopt the reasoning that we rejected in Horton or to extend Supreme Court and Fifth Circuit decisions in a manner contrary to Horton.[8] See Jacobs, 548 F.3d at 378.
III.
Section 8(a)(1) of the NLRA states that “[i]t shall be an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7].” 29 U.S.C. § 158(a)(1). The Board found that Convergys violated Section 8(a)(1) both by requiring prospective employees to sign a class and collective action waiver and by seeking to enforce the waiver against an employee. It held that both actions abrogated the same Section 7 right to participate in class and collective actions.
As explained above, Section 7’s guarantee of the right “to engage in other concerted activities for the purpose of .,. other mutual aid or protection,” 29 U.S.C. § 157, does not include a right to participate in class and collective actions. Accordingly, abrogation of the asserted right to participate in class and collective actions was not abrogation of a Section 7 right and therefore does not constitute an unfair labor practice under Section 8(a)(1). Contrary to the determination of the Board, Convergys did not engage in an unfair labor practice for purposes of Section 8(a)(1) by requiring- applicants to sign a waiver or by seeking to enforce the waiver.[9] ■
IV.
For 'the reasons stated above, we GRANT Convergys’s application for review of the National Labor Relations Board order-and DENY the Board’s cross-application for enforcement of the order.

. The Board did not determine whether the waiver is overbroad or whether it could reasonably be understood by an employee to prohibit the exercise of rights that it did not actually waive, and the issue is not before us on appeal.

. Because we are bound to follow our precedent, we cannot apply Chevron deference and, likewise, we do not reach how' we would interpret Section 7 apart from our binding precedent.

. Citing Reed v. Fla. Metro. Univ., Inc., 681 F.3d 630, 643 (5th Cir. 2012), abrogated on other grounds by Oxford Health Plans LLC v. Sutter, - U.S. -, 133 S.Ct. 2064, 186 L.Ed.2d 113 (2013) C‘[W]e have characterized a class action as a procedural device.”); Carter v. Countrywide Credit Indus., Inc., 362 F.3d 294, 298 (5th Cir. 2004) (class action procedures not a'substantive right under FLSA); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612-13, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (rule providing for class actions could not be interpreted to "abridge, enlarge or modify any substantive right”); Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 32, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (class action procedures not a substantive right under ADEA); Deposit Guar. Nat’l Bank v. Roper, 445 U.S. 326, 332, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (“[T]he right of a litigant to employ Rule 23 is a procedural right *638 only, ancillary to the litigation of substantive claims.'').

. See, e.g., Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326 (11th Cir. 2014); Sutherland v. Ernst & Young, LLP, 726 F.3d 290 (2d Cir. 2013); Owen v. Bristol Care, Inc., 702 F.3d 1050 (8th Cir. 2013). But see Morris v. Ernst & Young, LLP, 834 F.3d 975 (9th Cir. 2016), cert. granted, — U.S. —, 137 S.Ct. 809, 196 L.Ed.2.d 595 (2017); Lewis v. Epic Sys. Corp., 823 F.3d 1147 (7th Cir. 2016), cert. granted, — U.S. —, 137 S.Ct. 809, 196 L.Ed.2d 595 (2017).

. See, e.g., Jack in the Box, Inc. v. NLRB, 671 Fed.Appx. 316 (5th Cir. 2016); Citigroup Tech., Inc. v. NLRB, 671 Fed.Appx. 286 (5th Cir. 2016); Emp'rs Res. v. NLRB, 670 Fed.Appx. 271 (5th Cir. 2016); Citi Trends, Inc. v. NLRB, 668 Fed.Appx. 78 (5th Cir. 2016); 24 Hour Fitness v. NLRB, No. 16-60005, 2016 WL 3668038 (5th Cir. June 27, 2016); On Assignment Staffing Services, Inc. v. NLRB, No. 15-60642, 2016 WL 3685206 (5th Cir. June 6, 2016); Chesapeake Energy Corp. v. NLRB, 633 Fed.Appx. 613 (5th Cir. 2016); Murphy Oil USA, Inc. v. NLRB, 808 F.3d 1013 (5th Cir. 2015), cert. granted, — U.S. —, 137 S.Ct. 809, 196 L.Ed.2d 595 (2017).

.In support of this position, the Board cites Killion v. KeHE Distrib., LLC, 761 F.3d 574 (6th Cir. 2014), Killion is pot a persuasive basis for distinguishing our prior decisions as it is an out-of-circuit decision that interprets the FLSA rather than the NLRA, holds contrary to Fifth Circuit precedent that the FLSA’s provision for class actions conveys a ■ right that cannot be waived, declines to "decide whether a different rule should apply in the context of arbitration agreements, and relies on a framework for evaluating waivers that is not supported by the reasoning of Horton and its progeny. See id. at 590-92.

. To the extent the dissenting opinion disagrees with this holding, its disagreement is with Horton, which we are bound to follow. Jacobs, 548 F.3d at 378.

. The dissenting opinion also relies on two Board decisions. Unlike our own precedent, Board decisions are not binding on us.

. Convergys argues alternatively that a Section 7 right to participate in class and collective actions is waivable. Because we decide this case based on our binding precedent, we do not reach this argument.