# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60029

United States Court of Appeals
Fifth Circuit

**FILED**
August 9, 2017

Lyle W. Cayce
Clerk

LOGISTICARE SOLUTIONS, INCORPORATED,

Petitioner Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent Cross-Petitioner.

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board

Before HIGGINBOTHAM, ELROD, and HIGGINSON, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

LogistiCare Solutions, Incorporated, requires its employees and applicants for employment to sign a class or collective action waiver by which the employee or applicant waives any right to be a representative for, or member of, a class or collective action lawsuit against LogistiCare. An Administrative Law Judge and a three-member panel of the National Labor Relations Board concluded that the waiver violates Section 8(a)(1) of the National Labor Relations Act. Because we conclude, under our binding precedent, that the waiver does not violate Section 8(a)(1) explicitly, and because we conclude that the waiver cannot otherwise be reasonably

No. 16-60029

understood to violate the Act, we GRANT LogistiCare's petition for review and DENY the Board's cross-petition for enforcement.

## I.

LogistiCare requires its employees and applicants for employment to sign a "Class Action and Collective Action Waiver" in order to be eligible for employment. The waiver provides:

### Class Action and Collective Action Waiver

Class and Collective action lawsuits have been abused recently by trial lawyers forcing American Companies to pay large settlements, not because the cases have merit or because the Company violated any laws, but because the suits are too expensive to litigate and the company is left with no reasonable alternative. Class and Collective action suits primarily benefit the trial lawyers and rarely accomplish any other objective. There are more effective ways to protect your individual employment related rights than through a Class or Collective action law suit. Your signature on this document indicates that you agree to waive any right you may have to be a member of a Class or Collective action lawsuit or a representative of a Class or Collective action lawsuit against the Company.

I hereby acknowledge and understand that as a condition of my employment: [1] I am waiving my right to have a trial by jury to resolve any lawsuit related to my application or employment with the Company; [2] I am waiving my right to participate as a member of a Class or Collective action lawsuit and/or serve as a class representative of similarly situated employees in any lawsuit against the company.[1]

One applicant who signed the waiver brought an unfair-labor-practice charge with the National Labor Relations Board. The Board in turn brought a complaint alleging that LogistiCare violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) (NLRA or Act), by requiring employees and applicants to sign the waiver. In particular, the Board alleged

---

[1] The LogistiCare Employee Manual contains an abbreviated version of the waiver.

2

that: (1) the waiver's prohibition on engaging in class or collective litigation violates Section 8(a)(1) of the NLRA by infringing rights protected by Section 7 of the Act; and (2) the waiver independently violates Section 8(a)(1) because employees would reasonably interpret the waiver to restrict their right to file charges with the Board.

The dispute was first heard by an Administrative Law Judge, who accepted both of the Board's grounds for finding a Section 8(a)(1) violation. In a two-to-one decision, a three-member panel of the Board affirmed the ALJ's order. The Board first concluded that Section 7 of the Act guarantees employees the right to participate in class or collective actions. In so doing, it distinguished our decisions in *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013) and *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013 (5th Cir. 2015) because the waivers in those cases were contained within arbitration agreements, which are governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* Rather than relying on these cases, the Board looked to its own decision in *Convergys Corporation, et al.*, 363 NLRB No. 51 (2015).[2] The Board next concluded that the waiver is "independently unlawful" because "employees would reasonably read the rule as restricting their right to file unfair labor practice charges with the Board." Member Miscimarra dissented on both issues.

Having found two Section 8(a)(1) violations, the Board ordered LogistiCare to cease and desist from the unlawful conduct and to take steps to notify all applicants and current employees that the waiver was no longer

---

[2] The petition for review from the Board's order in that case was resolved by our decision in *Convergys Corporation v. NLRB*, No.15-60860 (5th Cir. Aug. 7, 2017).

No. 16-60029

enforceable. LogistiCare petitioned for review of the Board's order and the Board cross-petitioned for enforcement.[3]

## II.

We review the Board's factual findings under a substantial evidence standard. *Flex Frac Logistics, L.L.C. v. NLRB*, 746 F.3d 205, 207 (5th Cir. 2014) (quoting *Sara Lee Bakery Grp., Inc. v. NLRB*, 514 F.3d 422, 428 (5th Cir. 2008)). Substantial evidence is such relevant evidence "sufficient for a reasonable mind to accept as adequate to support [the] conclusion"; it is "more than a mere scintilla and less than a preponderance." *Id.* (alteration omitted). While we review the Board's legal conclusions *de novo*, we will "enforce the Board's order if its construction of the statute is reasonably defensible." *Murphy Oil*, 808 F.3d at 1017; *Pattern Makers' League of N. Am., AFL-CIO v. NLRB*, 473 U.S. 95, 114 (1985).

## III.

Section 8(a)(1) of the NLRA provides that "[i]t shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C. § 158(a)(1). Section 7 of the Act provides, in relevant part, that employees "shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157.

Determining whether an employer's action infringes a Section 7 right— and therefore violates Section 8(a)(1)—requires a two-step inquiry. First, we

---

[3] LogistiCare also requires applicants and employees to sign a jury-trial waiver. Though the NLRB alleged that this waiver violates the Act, the ALJ rejected this argument and that decision was affirmed.

No. 16-60029

must determine "whether the [employer's conduct] explicitly restricts activities protected by Section 7." *Flex Frac*, 746 F.3d at 208–09 (emphasis omitted). Second, even if the employer's action does not "explicitly" infringe on a Section 7 right, it still violates Section 8(a)(1) if, as relevant here, "employees would reasonably construe the language to prohibit Section 7 activity[.]" *Id.* at 209; *see also D.R. Horton*, 737 F.3d at 363 ("[A] company nonetheless violates section 8(a)(1) if employees would reasonably construe the language to prohibit section 7 activity."); *Murphy Oil*, 808 F.3d at 1019 (same).

## A.

The Board first determined that the waiver violates Section 8(a)(1) "explicitly." In particular, it concluded that an employee's right under Section 7 "to engage in other concerted activities" includes participation in class or collective action litigation, and so the waiver's prohibition of this activity "interfere[s]" with this right in violation of Section 8(a)(1). *See* 29 U.S.C. § 158(a)(1).

We addressed this precise issue in *Convergys Corporation v. NLRB*, No.15-60860 (5th Cir. Aug. 7, 2017). In that case, we held that our binding decision in *D.R. Horton* holds that Section 7 does not confer a substantive right to participate in class or collective action litigation and therefore forecloses the Board's argument. *Convergys*, No.15-60860, slip op. at 3–8. Because we are bound by our decision in *D.R. Horton*, we hold that the Board erred in concluding that the waiver violates Section 8(a)(1) explicitly.

## B.

The Board also determined that the waiver independently violates Section 8(a)(1) because employees would reasonably interpret the waiver to restrict their right to file charges with the Board. We have held that language that does not violate Section 8(a)(1) explicitly might still do so if "employees would reasonably construe the language to prohibit Section 7 activity." *Flex*

*Frac*, 746 F.3d at 209. In undertaking this inquiry, "we may not presume that a workplace rule impermissibly interferes with employees' right to exercise their Section 7 rights," *id.*; nor is it "enough that [the language] merely could possibly be read that way." *NLRB v. Arkema, Inc.*, 710 F.3d 308, 318 (5th Cir. 2013). Rather, it must actually "be reasonable for employees to interpret the [language] to prohibit Section 7 activities." *Id.* And in making this determination, "we 'must refrain from reading particular phrases in isolation.'" *Flex Frac*, 746 F.3d at 209 (quoting *Lutheran Heritage Village-Livonia*, 343 NLRB 646, 646 (2004)).

In this case, the Board determined that the waiver is "independently unlawful" because "employees would reasonably read the rule as restricting their right to file unfair labor charges with the Board." LogistiCare agrees that Section 7 confers a right to file charges with the Board, but it contends that the waiver cannot reasonably be understood to infringe this right.

In *D.R. Horton* and *Murphy Oil*, we considered whether certain class and collective action waivers would be reasonably understood to prohibit bringing charges to the Board. *D.R. Horton* involved an arbitration agreement by which the employees "waive[d] all rights to trial in court before a judge or jury on all claims between them" and agreed that "all disputes and claims" would "be determined exclusively by final and binding arbitration." 737 F.3d at 348. Affirming the Board, we held that the agreement could be reasonably interpreted to prohibit employees from filing unfair labor practice claims with the Board. *Id.* at 363–64. In particular, we reasoned that while the agreement used the terms "court," "trial," "jury," and "lawsuit," these references were "insufficient" because the agreement also referred "to court actions in one sentence and agency actions in another" and provided that employees waived their "right to file a lawsuit *or other civil proceeding*." *Id.* at 364 (emphasis

No. 16-60029

added). Read as a whole, the agreement could be reasonably understood to preclude filing charges with the Board. *Id.* at 363–64.

Likewise, in *Murphy Oil*, an arbitration agreement provided that "any and all disputes or claims," must be resolved by individual arbitration and that employees "waiv[ed] their right to be a party to any group, class or collective action claim in any other forum." 808 F.3d at 1019 (alteration omitted). Again, we determined that the "broad 'any claims' language" could create the reasonable impression that an employee was waiving his or her administrative rights. *Id.*; *see also Chesapeake Energy Corp. v. NLRB*, 633 F. App'x 613, 614–15 (5th Cir. 2016) (agreement providing that employees "must pursue any claims . . . solely on an individual basis through arbitration" violated Section 8(a)(1)).

As LogistiCare argues, the waiver's language in this case is far less expansive than the provisions in *D.R. Horton* and *Murphy Oil*. It refers to "trial lawyers," "trial by jury," and "lawsuits."[4] It does not contain generic references to "claims" or "disputes" as did the provisions in *Murphy Oil* and *D.R. Horton*. *Cf. Murphy Oil*, 808 F.3d at 1019; *D.R. Horton*, 737 F.3d at 348. Nor does the waiver reference an "agency," "other civil proceeding," or anything else that would suggest that it is intended to prohibit employees from bringing charges to the Board. *Cf. D.R. Horton*, 737 F.3d at 363–64. The absence of such capacious language in LogistiCare's waiver strongly suggests that a reasonable layperson would not construe the waiver's references to "lawsuits" or "suits" to preclude bringing charges to the Board.[5]

---

[4] The abbreviated version of the waiver contained in the employee handbook also refers to "jury trials," "judge," and "lawsuits."

[5] These same considerations distinguish this case from *Cellular Sales of Mo., LLC v. NLRB*, 824 F.3d 772, 774–75, 777–78 (8th Cir. 2016) (holding that an arbitration agreement providing that "[a]ll claims, disputes or controversies . . . shall be decided by [individual]

No. 16-60029

The Board has asserted a host of reasons for why the waiver violates Section 8(a)(1), but none of them are convincing. First, the Board points us to two of its own decisions: *U-Haul Co. of California, et al.*, 347 NLRB 375 (2006) and *Utility Vault Co., A Div. of Oldcastle Precast, Inc. & Wholesale Delivery Drivers, Salespersons, Indus. & Allied Workers, Local 848 Int'l Bhd. of Teamsters*, 345 NLRB 79 (2005). In *U-Haul*, the Board held unlawful an arbitration provision despite a disclaimer that the "arbitration process is limited to disputes, claims or controversies *that a court of law* would be authorized to entertain . . . ." 347 NLRB at 377 (emphasis added). And in *Utility Vault*, the Board found unlawful an agreement providing that certain specified claims "shall not be filed or pursued *in court*, and that [the employee was] forever giving up the right to have those claims decided *by a jury*." *Utility Vault*, 345 NLRB at 81 (some emphasis omitted).

Neither of these Board decisions are on point. While the reference to "court of law" in *U-Haul* is similar to the waiver's reference to "lawsuit," the *U-Haul* language did not appear in the actual employee agreement, but was contained in a separate memo announcing the policy. *U-Haul*, 347 NLRB at 377. The Board concluded that there was no indication in the memo that its reference to "court of law" was intended to limit the terms of the separate employee agreement. *Id.* at 377. No such problem besets the LogistiCare waiver. Likewise, in *Utility Vault*, the Board's decision relied heavily on the fact that the agreement at issue explicitly exempted certain types of claims from its scope, but did not specifically exempt charges to the Board.[6] 345 NLRB

arbitration" violated Section 8(a)(1) given its "breadth and generality" and "the absence of any limits to this broadly worded provision").

[6] Specifically, the agreement excluded: (1) claims for worker's compensation benefits; (2) claims for unemployment compensation benefits; and (3) claims subject to a union contract. *See Utility Vault*, 345 NLRB at 81.

at 81. According to the Board, a reasonable employee could infer from the express exclusion of certain claims that all other claims, including Board charges, were subject to the agreement. *Id*. at 82. The waiver in this case does not raise a similar problem.[7]

The Board next argues that a reasonable employee could construe the waiver as prohibiting Board charges because laypeople in prior cases have referred to actions before the Board as "lawsuits" or "suits." This anecdotal evidence has little probative value. While a layperson may well use the term "lawsuits" or "suits" loosely in conversation, it does not follow that a reasonable layperson would impute that colloquial meaning to a technical document that would not use these terms in an informal sense. In any event, the waiver does not refer to "lawsuits" in isolation, but includes references to "trial lawyers," and "trial by jury"—phrases typically associated with proceedings in a court of law. *See Flex Frac*, 746 F.3d at 209 ("[W]e must refrain from reading particular phrases in isolation.").

The Board counters with the fact that administrative and judicial proceedings have a common nomenclature (*e.g.*, judge, case, witness, etc.) and that both involve trials and lawyers. But this argument is self-defeating. Any layperson having sufficient familiarity with Board proceedings and judicial proceedings to know that they share a common vocabulary would surely—as a result of that knowledge—also be aware that actions before the Board are not, properly speaking, "lawsuits." And even if not, we would be hard-pressed to characterize such a mistaken equivalence as "reasonable."

---

[7] In any event, we are not bound by the Board's decisions. *See Pioneer Nat. Gas Co. v. NLRB*, 662 F.2d 408, 411 (5th Cir. 1981) ("[W]e are not bound by the Board's conclusion that the Act has been violated.").

No. 16-60029

Finally, the Board argues that because Board charges "may eventually end up in court" a reasonable layperson could interpret a class or collective action waiver to prohibit bringing charges to the Board. *See U-Haul*, 347 NLRB at 377–78 (concluding that "inasmuch as decisions of the National Labor Relations Board can be appealed to a United States court of appeals, the reference to a 'court of law' does nothing to clarify that the arbitration policy does not extend to the filing of unfair labor practice charges"). Taken to its logical conclusion, this argument would invalidate *every* collective action waiver that does not contain an explicit statement indicating that it does not preclude bringing charges to the Board. After all, absent such an express statement, a layperson (or the Board) could always point to the fact that Board charges may be appealed to the courts of appeals, regardless of how clear the provision might otherwise be. We have never required such an express statement and, in fact, have previously declined to do so. *See Murphy Oil*, 808 F.3d at 1019 ("We do not hold that an express statement must be made that an employee's right to file Board charges remains intact before an employment arbitration agreement is lawful."). We see no reason to change course here.[8]

**IV.**

Accordingly, we GRANT in full LogistiCare's petition for review and DENY in full the Board's cross-petition for enforcement.

---

[8] The Board also argues that a reasonable layperson could interpret the waiver to prohibit filing charges with the Board because the waiver's heading does not use the term "lawsuit" or "trial." We reject this argument. To discern the meaning of a writing—and the range of reasonable meanings a layperson might ascribe to it—we must assess the writing as a whole. *See Flex Frac*, 746 F.3d at 209 ("[W]e must refrain from reading particular phrases in isolation."). While the waiver's heading does not refer to "lawsuits" or "trials," the body of the waiver does. These references to "lawsuit," "trial lawyers," and "trial by jury" in the body of the wavier obviate any ambiguity that might arise from their absence in the waiver's heading.

No. 16-60029

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring in part; dissenting in part:

As in *Convergys Corporation v. NLRB*,[1] this case concerns whether a company's class and collective action waiver violates Section 8(a)(1) of the National Labor Relations Act ("the Act"), 29 U.S.C. §§ 151, *et seq*. For the reasons stated in my dissent in *Convergys*, I would hold that a bare class and collective action waiver outside of an arbitration agreement violates the Act. On this issue, I dissent from the majority opinion.

However, I agree with the majority's analysis and conclusion that the waiver does not violate § 8(a)(1) for the independent reason that employees could reasonably interpret it to restrict their right to bring charges with the Board. On this issue, I concur in the majority opinion.

---

[1] No.15-60860 (5th Cir. Aug. 7, 2017).

No. 16-60029

STEPHEN A. HIGGINSON, Circuit Judge, concurring in Section III(A); dissenting as to Section III(B):

I would uphold the Board's determination that an employee could reasonably interpret the language of LogistiCare's waiver to restrict the employee's right to bring unfair labor practice charges with the Board. We must read the agreement from the position of non-lawyer employees, not judges, remembering that "[r]ank-and-file employees do not generally carry lawbooks to work or apply legal analysis to company rules as do lawyers, and cannot be expected to have the expertise to examine company rules from a legal standpoint." *Ingram Book Co.*, 315 N.L.R.B. 515, 518 n.2 (1994). With this in mind, I disagree with LogistiCare's claim that because the waiver includes the words "lawsuit" and "trial lawyers," "any reader would necessarily understand" that the waiver relates only to judicial, and not administrative, proceedings. The Board observes that it is not uncommon for employees to refer to Board proceedings as "lawsuits" and notes that "administrative proceedings share with their judicial counterparts an entire nomenclature, including terms like judge, case, trial, attorney, lawyer, witness, subpoena, and testimony." Thus, when an employee signs LogistiCare's agreement banning all "Class and Collective action lawsuit[s]," I agree with the Board that "[t]he reasonable impression could be created that [the] employee is waiving not just . . . trial rights, but . . . administrative rights as well." *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 344, 363 (5th Cir. 2013). Because I believe the Board's finding that the agreement could be misconstrued was reasonable, I would enforce its order requiring LogistiCare to take corrective action. *See id.* at 364.

I agree with the majority that our recent decision in *Convergys Corporation v. N.L.R.B.*, No. 15-60860, forecloses the Board's alternative argument that LogistiCare's waiver violates Section 8(a)(1) by requiring

12

employees to waive the ability to participate in class or collective action litigation. I view this position as irreconcilable with this court's precedent. *See D.R. Horton,* 737 F.3d at 361. Nonetheless, as I explained in my concurring opinion in *Convergys*—and as Judge Higginbotham explained in his dissenting opinion—I believe the better view is that a right to class and collective action falls within Section 7's scope. *See also Patterson v. Raymours Furniture Co.,* 659 F. App'x 40, 43 (2d Cir. 2016), *as corrected* (Sept. 7, 2016), *as corrected* (Sept. 14, 2016) (unpublished) (summary order); *Lewis v. Epic Sys. Corp.,* 823 F.3d 1147 (7th Cir. 2016), *cert. granted,* 137 S. Ct. 809 (2017); *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted,* 137 S. Ct. 809 (2017).

Accordingly, I concur in part and dissent in part.